**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NOALA FRITZ *et al.*,<br><br>             Plaintiffs,<br><br>    v.<br><br>ISLAMIC REPUBLIC OF IRAN *et al.*,<br><br>             Defendants. | Civil Action No.: 15-456 (RDM) |

### PLAINTIFFS' MEMORANDUM IN SUPPORT FOR DAMAGE AWARDS FOR HOSTAGE TAKINGS, TORTURE, AND EXTRAJUDICIAL KILLINGS

Plaintiffs submit this memorandum and accompanying exhibits and attachments to Special Master [_____] in support of their requests for awards of damages arising from their injuries caused by Defendants as alleged and proven in this civil action. While this master memorandum describes issues of law that are present for all four families, Plaintiffs have also submitted four appendices with individualized damages evidence for each of the four families, with a set of exhibits attached to each.

Plaintiffs have submitted evidence and demonstrated to the Court that in accordance with 28 U.S.C. § 1608(e) they are entitled to recover damages pursuant to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605A(c), and in the case of the single non-U.S. national the law of the District of Columbia. Plaintiffs' requests for awards of damages are squarely within the heartland and median range of prior awards of damages by judges in other FSIA terrorism-exception cases in this district as reflected in the chart below:

| Proposed Compensatory Damages Per Family Member Including Direct Victim | | | |
|---|---|---|---|
| Case | Number of Plaintiffs[1] | Total Compensatory Damages[2] | Compensatory Damages Per Family Member |
| *Gates v. Syrian Arab Republic,* 580 F. Supp. 2d 53, 75 (D.D.C. 2008) | 6 | $122,359,587 | $20,393,265 |
| *Pugh v. Socialist People's Libyan Arab Jamahiriya,* 530 F. Supp. 2d 216, 265-273 (D.D.C. 2008) | 50 | $549,779,000 | $10,995,580 |
| *Wultz v. Islamic Republic of Iran, 864 F. Supp. 2d 24, 43 (D.D.C. 2012)* | 4 | $32,086,634 | $8,021,659 |
| *Foley v. Syrian Arab Republic*, 281 F. Supp. 3d 153 (D.D.C. 2017) | 11 | $86,396,811 | $7,854,255 |
| *Kilburn v. Islamic Republic of Iran, 699 F. Supp. 2d 136, 157-158 (D.D.C. 2010)* | 2 | $11,030,000 | $5,515,000 |
| ***Fritz v. Islamic Republic of Iran* (D.D.C. 2018)** | **26** | **$131,234,663 (proposed)** | **$5,047,487 (proposed)** |
| *Thuneibat v. Syrian Arab Republic,* 167 F. Supp. 3d 22, 55 (D.D.C. 2016) | 10 | $47,622,009 | $4,762,201 |

The Plaintiffs respectfully request that the Special Master find and recommend to the Court that the Court award and enter a final judgment on damages as described in further detail below.

---

[1] This value includes compensatory damages to both the estates of direct victims and immediate family members.
[2] These values reflect awards prior to any adjustment for pre-judgment interest.

# TABLE OF CONTENTS

**Page**:

I.  Procedural Posture ....................................................................................................4

II. Plaintiffs Are Entitled to Damages Pursuant to 28 U.S.C. § 1605A(c) ...............................5

III. Estates of Direct Victims are Entitled to Economic Damages ...........................................7

IV. Estates of Direct Victims are Entitled to Damages for Pain and Suffering ........................8

    A.  Award of Pain and Suffering Damages to Estates of Three Victims Abducted, Tortured and Murdered in Karbala, Iraq in January 2007 ....................8

    B.  Award of Pain and Suffering Damages to Estate of Ahmed Al-Taie ...................12

V.  Plaintiffs Have Suffered Severe Emotional Distress and are Entitled to Solatium Damages ..................................................................................................................14

    A.  Overview and General Framework .......................................................................14

    B.  Calculation of Solatium Damages for Immediate Family Members of Karbala Victims ..................................................................................................17

    C.  Additional Solatium Damages to Immediate Family Members of Ahmed Al-Taie ................................................................................................................19

VI. Plaintiffs' Requests for Solatium Damages are Reasonable in Light of Increased Costs of Living ........................................................................................................21

VII. Plaintiffs are Entitled to Prejudgment Interest ...............................................................24

VIII. Plaintiffs are Entitled to Exemplary Damages ...............................................................29

    A.  Overview ............................................................................................................29

    B.  Impact of Recent *Owens* Decision ....................................................................32

IX. Conclusion ...............................................................................................................33

## I.    Procedural Posture

On November 5, 2015, Plaintiffs filed the Amended Complaint in this civil action. (Dkt. 9). The Clerk of Court entered defaults against the Islamic Republic of Iran ("Iran") on August 14, 2017 (Dkt. 23), and Iran's Islamic Revolutionary Guards Corps ("IRGC") on March 27, 2018 (Dkt. 39), after the Defendants failed to answer or otherwise respond to the Amended Complaint. From April 10, 2018 through April 13, 2018, the Court presided over an evidentiary hearing on the issue of liability.  The evidentiary proceedings included testimony from thirteen witnesses (including fact and expert witnesses) and eighty-eight exhibits.

This case arises from the kidnappings, torture, and murders of U.S. service-members Jacob Fritz, Johnathan Bryan Chism (hereinafter "Bryan Chism" or "Bryan"), and Shawn Falter near Karbala, Iraq on January 20, 2007 and the kidnapping of U.S. service-member Ahmed Al-Taie in Baghdad, Iraq on October 23, 2006 and his subsequent torture and murder. The group responsible for these hostage-takings, torture, and murders was the Iranian-supported militia Asai'b Ahl al-Haq ("AAH") (also known as "the Khazali Network") along with Iranian proxy Hezbollah both of which received critical material support and direction from Defendants, Iran and the IRGC.  Plaintiffs filed this civil action pursuant to 28 U.S.C. § 1605A seeking to hold Iran and the IRGC civilly liable for Plaintiffs' injuries under Section 1605A.

Plaintiffs in this action include the estates of Jacob Fritz, Bryan Chism, Shawn Falter, and Ahmed Al-Taie.  All four direct victims were U.S. citizens and members of the United States military at the times of their kidnappings, torture, and murders.[3]   The twenty-two remaining

---

[3] Trial Transcript of Julie Chism, at 125, 128-131 (April 12, 2018); Trial Transcript of Hathal Taie, at 49, 51-52 (April 13, 2018); Trial Transcript of Linda Falter, at 62, 68-71 (April 13, 2018); Trial Transcript of Noala Fritz, at 84-86, 92. Citations to the trial transcript are hereinafter identified as "[last name of witness] T-[day N of hearing]-[page range] ([under seal as relevant]). Citations to the deposition transcripts are hereinafter identified as [Last Name] [(disambiguating first name if necessary)] Depo. T-[page range].

Plaintiffs are the immediate family members of the four service members, their parents, sisters, and brothers:

- Jacob's mother, Noala Fritz; the estate of his father Lyle Fritz (who died following the events leading to this civil action); and his brothers, Daniel Fritz and Ethan Fritz;[4]

- Bryan's mother, Elizabeth Chism; his father, Danny Chism; his stepmother, Vanessa Chism, and his sister, Julie Chism;[5] and

- Shawn's father, Russell J. Falter; his mother Linda Falter; his sister, Marjorie Falter; his brothers Russell C. Falter, John Sackett and Jason Sackett; his stepsister, Marsha Novak; and his stepbrothers, David Lucas, Tim Lucas, and Andrew Lucas;[6]

- Ahmed's father, Kousay Al-Taie; his mother Nawal Al-Taie; and his brothers Hathal Taie and Bashar Al-Taie.[7]

All of the family member plaintiffs are also U.S. citizens with the exception of Ahmed Al-Taie's brother, Bashar Al-Taie who is a citizen of Canada.[8]

## II.     Plaintiffs Are Entitled to Damages Pursuant to 28 U.S.C. § 1605A(c)

28 U.S.C. § 1605A(c) is a federal cause of action against a state-sponsor of terrorism if the claimant or the victim was, at the time of the terrorist act, a national of the United States, as were all of the four victims here.   Section 1605A(c) provides that "damages may include economic damages, solatium, pain and suffering, and punitive damages," as suffered by the Plaintiff victims and their families. Plaintiffs demonstrated at trial that AAH led by Qais al-Khazali and Laith al-Khazali received material support in the form of funding, training, weapons, intelligence, safe harbor, and direction from Iran's IRGC and its proxy Hezbollah that proximately caused the hostage takings, torture, and extrajudicial killings of the four direct victims in this case.   Thus, under 28 U.S.C. § 1605A(c), each of the Plaintiffs except for Bashar

---

[4] Fritz T-4-84-86, 92; Tr. Ex. 43.
[5] Chism T-3-124-128; Chism (Vanessa) Depo. T-6; Chism (Danny) Depo. T-8; Chism (Elizabeth) Dep. T-6; Tr. Ex. 44.
[6] Falter T-4-63, 70; Tr. Ex. 45; Ex. 68.
[7] Taie T-4-47-48, 54; Ex. 46.
[8] Chism T-3-124-128; Chism (Vanessa) Depo. 6; Chism (Danny) Depo. 8; Chism (Elizabeth) Depo. 6; Taie T-4-47-48, 54; Falter T-4-63, 70; Fritz T-4-84-85.

Al-Taie[9] are each entitled to a federal damages award against Iran and IRGC because (1) they are the representatives of the estates of the decedents, Jacob Fritz, Bryan Chism, Shawn Falter,  and Ahmed Al-Taie or (2) they are immediate family members of Jacob Fritz, Bryan Chism, Shawn Falter, and Ahmed Al-Taie, being either the parents or the siblings of the decedents. In addition, each of the Plaintiffs except for Bashar Al-Taie is entitled to an award of punitive damages against Iran and IRGC, under 28 U.S.C. § 1605A(c), for acts of torture, hostage-taking, and extrajudicial killing arising from the kidnappings, tortures, and murders of Jacob Fritz, Bryan Chism, Shawn Falter, and Ahmed Al-Taie.

To recover damages under the FSIA, Plaintiffs must prove that their injuries were "reasonably certain" to occur, in other words, more likely to occur than not, as a result of the foreign state's conduct. *Thuneibat v. Syrian Arab Republic*, 167 F. Supp. 3d 22, 47-48 (D.D.C. 2016).  Plaintiffs must show "the amount of damages by a reasonable estimate consistent with this [Circuit]'s application of the American rule on damages." *Thuneibat*, 167 F. Supp. 3d at 48 (citing *Roth v. Islamic Republic of Iran*, 78 F. Supp. 3d 379, 402 (D.D.C. 2015) (*quoting Salazar v. Islamic Republic of Iran*, 370 F. Supp. 2d 105, 115–16 (D.D.C. 2005)) (internal quotations omitted and alteration in the original)).  "In determining the reasonable estimate, courts may look to expert testimony and prior awards for comparable injury." *Braun v. Islamic Republic of Iran*, 228 F. Supp. 3d 64, 82 (D.D.C. 2017) (internal citations omitted).  "A plaintiff may establish the necessary proof for damages through affidavits or live testimony." *Kim v. Democratic People's Republic of Korea*, 87 F. Supp. 3d 286, 289 n.1 (D.D.C. 2015).

---

[9] As a non-U.S. national, Bashar Al-Taie is ineligible to recover under the federal law cause of action, thus as discussed later, he has only a state law cause of action. *See Owens v. Republic of Sudan*, 864 F.3d 751, 769 (D.C. Cir. 2017) ("We hold also that those plaintiffs ineligible to proceed under the federal cause of action may continue to press their claims under state law.").

Accordingly, Plaintiffs have attached hereto four appendices (Appendices A through D, one per family) containing transcripts of live testimony and accompanying exhibits supporting damages awards for economic loss and pain and suffering for the estates of each of the direct victims—Jacob Fritz, Bryan Chism, Shawn Falter, and Ahmed Al-Taie—and solatium damages for each of their immediate family members.

## III.   Estates of Direct Victims are Entitled to Economic Damages

Economic damages may be awarded to Plaintiffs pursuant to 28 U.S.C. § 1605A(c). Economic damages are available to compensate the estate of the decedent for the victim's lost earning capacity. *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 83 (D.D.C. 2010) (explaining that estates of those who did not survive the attack can recover economic losses stemming from wrongful death of the decedent).

As to economic damages of the Estates of Jacob Fritz, Bryan Chism, Shawn Falter and Ahmed Al-Taie, resulting from the tortious conduct of Iran and the IRGC, Plaintiffs have provided evidence of each estate's economic losses by submitting the expert reports of Dr. James Markham, a senior economist at the Center for Forensic Economic Studies ("CFES") and Chad Staller, President and senior economist at the CFES.[10] *See* Expert Report of CFES for the Estate of Jacob Fritz attached hereto as Appendix A10 and incorporated herein by reference, Expert Report of CFES for the Estate of Bryan Chism attached hereto as Appendix B9 and incorporated herein by reference, Expert Report of CFES for the Estate of Shawn Falter attached hereto as Appendix C17 and incorporated herein by reference, and Expert Report of CFES for the Estate of Ahmed Al-Taie attached hereto as Appendix D10 and incorporated herein by reference.

---

[10] Federal Rule of Evidence Rule 702 allows the testimony of "a witness who is qualified as an expert by knowledge, skill, experience, training, or education" and the appendix to each of the damages reports properly lays out such a foundation to allow expert testimony by Markham and Staller.

Plaintiffs' evidence in support of their claims for economic damages are set forth in Appendix A for the Estate of Jacob Fritz and incorporated herein by reference, Appendix B for the Estate of Bryan Chism and incorporated herein by reference, Appendix C for the Estate of Shawn Falter and incorporated herein by reference, and Appendix D for the Estate of Ahmed Al-Taie and incorporated herein by reference.

## IV.    Estates of Direct Victims are Entitled to Damages for Pain and Suffering

The Estates of Jacob Fritz, Bryan Chism, Shawn Falter, and Ahmed Al-Taie are entitled to pain and suffering damages as a result of Defendants' actions.  Upon evidence of conscious pain and suffering, determination of the compensation has largely been trusted to the discretion of the trier of fact based upon factors including the duration and nature of the suffering endured. *Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1, 28 (D.D.C. 1998).  The trier of fact has broad discretion in calculating damages for pain and suffering:

> "If Plaintiff presents sufficient evidence of conscious pain and suffering, determination of the compensation has largely been relegated to the discretion of the trier of fact by courts in this jurisdiction based upon factors including the duration and nature of the suffering endured.  The United States Court of Appeals for the District of Columbia Circuit has firmly established that the trier of fact has broad discretion in calculating damages for pain and suffering."

*Flatow*, 999 F. Supp. at 28 (citing *Taylor v. Washington Terminal Co.*, 409 F.2d 145 (D.C. Cir. 1969), *cert. denied*, 396 U.S. 835 (1969)).  Courts in the D.C. Circuit have noted "[a]n award is even more warranted in an action for a violent and cruel death by terrorism."  *Stern v. Islamic Republic of Iran*, 271 F. Supp. 2d 286, 300 (D.D.C. 2003).

### A.    Award of Pain and Suffering Damages to Estates of Three Victims Abducted, Tortured and Murdered in Karbala, Iraq in January 2007

Federal courts in D.C. have "adopted a general procedure for the calculation of damages that begins with the baseline assumption that persons suffering substantial injuries in terrorist attacks who survive the attack are entitled to $5 million in compensatory damages."  *Wultz v.*

*Islamic Republic of Iran*, 864 F. Supp. 2d 24, 37-38 (D.D.C. 2012); *accord Cohen v. Islamic Republic of Iran*, 268 F. Supp. 3d 19, 24 (D.D.C. 2017).  In cases where a victim only survives a terrorist attack for a very short period courts have often made a base award $1 million to reflect the "damages for the victim's pain and suffering that occurred between the attack and the victim's death." *Haim v. Islamic Republic of Iran*, 425 F. Supp. 2d 56, 71 (D.D.C. 2006); *accord Eisenfeld v. Islamic Republic of Iran,* 172 F. Supp. 2d 1, 8 (D.D.C. 2000) (awarding $1 million for pain and suffering endured in the several minutes between the suicide bombing of a passenger bus and the victim's death); *Elahi v. Islamic Republic of Iran*, 124 F. Supp. 2d 97, 112-13 (D.D.C. 2000) (awarding $1 million for pain and suffering endured while victim of assassination fought with his attacker, a period of less than four minutes).  However, that approach has not been uniform and courts have taken into account the unique circumstances of each case.  *See*, *e.g.*, *Pugh v. Socialist People's Libyan Arab Jamahiriya*, 530 F. Supp. 2d 216, 221, 265-266 (D.D.C. 2008) (awarding $18,000,000 in pain and suffering damages to victims who survived just a few minutes after a plane bombing); *Stethem v. Islamic Republic of Iran*, 201 F. Supp. 2d 78, 89 (D.D.C. 2002) (awarding $1.5 million in pain and suffering damages to victim who survived just a few hours).

Moreover, virtually all of the cases in which an award was made of just $1 million involved a discrete attack after which the victim quickly succumbs to their injuries and there were no other aggravating circumstances such as torture.  In contrast, the abduction, torture, and murders of Jacob Fritz, Bryan Chism, and Shawn Falter do not fit this description or model.  In analogous cases also involving aggravated circumstances, courts have deviated upward from the $1,000,000 baseline for relatively shorter periods of pain of suffering.

For example, in *Stethem v. Islamic Republic of Iran*, terrorists hijacked an airplane and executed one U.S. citizen after repeatedly beating him.  201 F. Supp. 2d at 80.  The court awarded $500,000 to the estate of the executed victim "for the pain and suffering he endured prior to being singled out for execution" and an additional $1 million for "the several minutes of anguish and pain [the victim] endured as and immediately after being shot by [a terrorist] and thrown from the airplane" for a total of $1.5 million in pain and suffering damages.  *Id*. at 89. The logic of *Stethem* suggests any pain and suffering award to the three Karbala victims must account for the specific facts surrounding their torture and execution.  These facts include that the three men were bound in the back of vehicles, beaten severely (some of them while suffering from gunshots), and driven to another location prior to their execution all the while living in terror of further and greater torture and fear of their imminent execution.

In *Foley v. Syrian Arab Republic*, the Court awarded $30 million in pain and suffering damages to the estate of Private First Class Kristian Menchaca who was missing for only three days but where the evidence showed that during his captivity he had been "subjected to various blunt force injuries, strangulation, and the removal of his eyes and tongue before his death."  281 F. Supp. 3d 153 (D.D.C. 2017); *see also Foley v. Syrian Arab Republic*, 249 F. Supp. 3d 186, 198-199 (D.D.C. 2017) (liability opinion).  Although Mr. Menchaca's torture was particularly brutal and the damages award reflects that, it also supports the inference that even during a relatively brief period of captivity such as that suffered by the three Karbala victims, extraordinary torture and fear of imminent death can justify a higher award.  Similarly, in *Gates v. Syrian Arab Republic*, the Court awarded $50,000,000, each, in pain and suffering damages to the estates of two U.S. contractors who were held captive for just a few days before being decapitated during which "each man suffered unimaginable mental and physical agony."  580 F.

Supp. 2d 53, 72-73 (D.D.C. 2008).   Finally, in *Pugh v. Socialist People's Libyan Arab Jamahiriya*, the Court awarded the estate of each passenger that died in an aircraft bombing over the desert of Niger $18 million in pain and suffering damages "based on the fact that any passengers who likely survived the mid-air explosion experienced horrific terror and excruciating pain for as long as three minutes as they were burned alive and tumbled to the earth."  530 F. Supp. 2d at 221, 265-266.

Accordingly, Plaintiffs submit that an award of at least $5 million is appropriate in these circumstances—which corresponds to the baseline as pain and suffering awards made to plaintiffs who were tortured during a relatively brief period of captivity.  *See Wultz*, 864 F. Supp. 2d at 37-38.  As outlined in Appendices A-C, the three Karbala victims were abducted in a highly sophisticated raid planned and directed by Iran and the IRGC, during which the forensic evidence demonstrates they were brutally tortured and suffered extreme pain before being executed.  During this entire period, they were in reasonable fear of their impending deaths.  It is well-established that such impending fear of death is compensable in awarding pain and suffering damages even outside the FSIA context.[11]  In light of these aggravating circumstances, Plaintiffs request $5 million in pain and suffering damages for each of the estates of Jacob Fritz, Bryan Chism, and Shawn Falter.  Below is a chart summarizing how Plaintiffs' request compares to other recent awards.

---

[11] *See Haley v. Pan American World Airways, Inc.*, 746 F.2d 311, 318 (5th Cir. La. 1984) (finding that damages are allowed for decedent's fear of impending death); *Shu-Tao Lin v. McDonnell Douglas Corp. and American Airlines, Inc.*, 742 F.2d 45 at 53 (2d Cir. 1984) (New York law permits recovery for a decedent's pre-impact fear as there is "no intrinsic or logical barrier to recovery for the fear experienced during a period in which the decedent is uninjured but aware of impending death."); *United States v. Furumizo*, 381 F.2d 965 (9th Cir. 1967) (affirming district court's award for the 'decedent's pain and suffering during the descent of the Piper plane, its crash to the ground, and the burning of decedent to death . . . .").

| Pain and Suffering Awards in Other Similar Cases Where Victim Died During or Shortly After Terrorist Attack | |
|---|---|
| **Case** | **Pain and Suffering** |
| *Gates v. Syrian Arab Republic,* 580 F. Supp. 2d 53, 72-73 (D.D.C. 2008) (victims decapitated several days in captivity) | $50,000,000 |
| *Foley v. Syrian Arab Republic*, 281 F. Supp. 3d 153 (D.D.C. 2017) (victim murdered three days after abduction) | $30,000,000 |
| *Pugh v. Socialist People's Libyan Arab Jamahiriya*, 530 F. Supp. 2d 216, 221, 265-266 (D.D.C. 2008) (victims killed in bombing of airliner) | $18,000,000 |
| *Wultz v. Islamic Republic of Iran*, 864 F. Supp. 2d 24, 38(D.D.C. 2012) (awarding $8,000,000 to victim injured during terrorist bombing that died four weeks later) | $8,000,000 |
| *Peterson v. Islamic Republic of Iran*, 515 F. Supp. 2d 25, 53 (D.D.C. 2007) (awarding $7 million and $7.5 million pain and suffering damages to U.S. service-members who survived barracks bombings for approximately a week) | $7.5 million in pain and suffering to service-member who survived 8 days<br><br>$7 million in pain and suffering to service-member who survived 7 days |
| **Proposed Pain and Suffering Damages for *Fritz v. Islamic Republic of Iran* - Jacob Fritz, Bryan Chism, and Shawn Falter** | **$5,000,000** |
| *Stethem v. Islamic Republic of Iran*, 201 F. Supp. 2d 78, 89 (D.D.C. 2002) (victim died after being beaten, shot, and thrown from plane during hi-jacking) | $1,500,000 |

## B.    Award of Pain and Suffering Damages to Estate of Ahmed Al-Taie

As outlined in Appendix D, Ahmed Al-Taie was kidnapped on October 23, 2006 and his remains were not returned to his family until February 2012—a period of approximately five years and four months.  The evidence at trial established that Ahmed was murdered by AAH in approximately late 2009.  Ex. 76 at ¶¶ 23-24; McDonnell T-4-15-16 (sealed); *accord* Mallak T-4-37-38 (concluding based on forensic evidence that Ahmed Al-Taie was killed between

February 22, 2009 and February 22, 2011). During his time in captivity prior to his murder, Ahmed was repeatedly and brutally beaten. Ex. 76 at ¶¶ 10, 13; McDonnell T-4-12-13 (sealed).

In similar cases of state-sponsored terrorism involving "prolonged and abusive captivity, plaintiffs are awarded approximately $10,000 per day for the pain and suffering they experienced while captive." *Price v. Socialist People's Libyan Arab Jamahiriya*, 384 F. Supp. 2d 120, 134 (D.D.C. 2005) ($1.05 million for 105 days of captivity); *Massie v. Government of Democratic People's Republic of Korea*, 592 F. Supp. 2d 57, 77 (D.D.C. 2008) (awarding $10,000 per day for 335 days of imprisonment by government of North Korea); *Kilburn v. Islamic Republic of Iran*, 699 F. Supp. 2d 136, 156-157 (D.D.C. 2010) ($5.03 million for 503 days as hostage); *Sutherland v. Islamic Republic of Iran*, 151 F. Supp. 2d 27, 51 (D.D.C. 2001) ($23.54 million for 2,354 days of captivity); *Anderson v. Islamic Republic of Iran*, 90 F. Supp. 2d 107, 113 (D.D.C. 2000) ($24.54 million for 2,454 days of captivity).

Congress similarly adopted this standard in the Justice for U.S. Victims of State Sponsored Terrorism Act. 34 U.S.C. § 20144 (awarding "$10,000 per day for each day that a United States person was taken and held hostage from the United States embassy in Tehran, Iran, during the period beginning November 4, 1979, and ending January 20, 1981"). Based on the evidence presented at trial and summarized in more detail in Section II of Appendix D, Ahmed Al-Taie died during the second half of 2009. Utilizing a conservative estimate for Ahmed's murder of October 1, 2009 (the mid-point of the second half of 2009), Ahmed spent 1,074 days in captivity. Accordingly, Plaintiffs submit that based on these facts an award of pain and suffering damages of $10.74 million is appropriate as to the estates of Ahmed Al-Taie.

V.      **Plaintiffs Have Suffered Severe Emotional Distress and are Entitled to Solatium Damages**

A.      **Overview and General Framework**

Damages for solatium are to compensate for "the mental anguish, bereavement and grief that those with a close personal relationship to a decedent experience as the result of the decedent's death, as well as the harm caused by the loss of the decedent, society and comfort." *Valore*, 700 F. Supp. 2d at 85 (citing *Belkin v. Islamic Republic of Iran*, 667 F. Supp. 2d 8, 22 (D.D.C. 2009)).   In determining the appropriate amount to compensate for victims' family members' emotional distress, "the Court may look to prior decisions awarding damages . . . for solatium." *Acosta v. Islamic Republic of Iran*, 574 F. Supp. 2d 15, 29 (D.D.C. 2008).   "Courts may presume that spouses and those in direct lineal relationships with victims of terrorism suffer compensable mental anguish." *Spencer v. Islamic Republic of Iran*, 71 F.Supp.3d 23, 27 (D.D.C. 2014) (citing *Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1, 30 (D.D.C.1998)).   The mental trauma that occurs upon hearing the terrible news of an immediate family member's passing does not stop a few months or even a year after.   "It is entirely possible to come to terms with the fact of death, and yet be unable to resolve the sense of anguish regarding the circumstances of death. This is particularly true where the death was sudden and violent.   How the claimant learned of decedent's death, and whether there was an opportunity to say good-bye or view the body can be a significant factor contributing to the claimant's anguish. . . ." *Fraenkel v. Islamic Republic of Iran*, -- F.3d at __, 2018 WL 2749233, at *6 (quoting *Flatow*, 999 F. Supp. at 30).

Solatium damages, by their nature, are "unquantifiable," *Moradi v. Islamic Republic of Iran*, 77 F. Supp. 3d 57, 72 (D.D.C. 2015), and do not readily lend themselves to quantification "through 'models and variables.'" *Fraenkel*, -- F.3d at __, 2018 WL 2749233, at *7 (quoting *Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1, 32 (D.D.C. 1998)).   Accordingly, federal

courts in D.C. have developed a commonly accepted standardized framework, a touchstone from which solatium damages under the FSIA can be assessed known as the *Heiser* damages framework. *Estate of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229, 269 (D.D.C. 2006); *see Roth*, 78 F. Supp. 3d at 403 (noting the "framework has been adopted by other courts as an appropriate measure of solatium damages for the family members of victims of state-sponsored terror" (citing *Valore*, 700 F. Supp. 2d at 85)).

The *Heiser* framework provides guidance with respect to all of the familial relationships present in this case. The parents of deceased victims should each receive a baseline award of $5 million in damages, and siblings should each receive a baseline award of $2.5 million in damages. *Heiser,* 466 F. Supp. 2d at 269. The law makes no distinction between full-blood and half-blood siblings. In affirming the Special Master's recommendation of the full *Heiser* baseline solatium amount to a half-brother, another court in this district held that half-siblings are "presumed to recover as a full-blood sibling would." *Murphy v. Islamic Republic of Iran*, 740 F. Supp. 2d 51, 75, 79 (D.D.C. 2010) (quoting *Peterson v. Islamic Republic of Iran*, 515 F. Supp. 2d 25, 53 (D.D.C. 2007) ( "Peterson II ")); *accord Spencer v. Islamic Republic of Iran*, 71 F. Supp. 3d 23, 27 (D.D.C. 2014) ("Half-blood siblings are presumed to recover at the same level as full-blood siblings would, unless the evidence indicates that such individuals did not have a close relationship with the victim") (citations omitted).

"In applying this framework, however, courts must be wary that '[t]hese numbers . . . are not set in stone.'" *Fain v. Islamic Republic of Iran*, 885 F. Supp. 2d 78, 82 (D.D.C. 2012) (quoting *Murphy*, 740 F.Supp.2d at 79). Instead, these numbers generally serve only as a baseline from which the Court may deviate in order to compensate for specific circumstances. *Braun*, 228 F. Supp. 3d. at 85. Indeed, as the D.C. Circuit recently recognized, the *Heiser*

framework is not a mandatory scheme and "[w]hile past solatium awards from comparable cases are appropriate sources of guidance for district courts, 'different plaintiffs (even under FSIA) will prove different facts that may well (and should) result in different damage awards.'" *Fraenkel v. Islamic Republic of Iran*, No. 17-7100, -- F.3d --, 2018 WL 2749233, at *10 (D.C. Cir. June 8, 2018).   Thus, "District Court judges invariably must exercise discretion in determining damages awards under the FSIA" based on the specific facts presented.   *Id.*

"[D]eviations may be warranted when, *inter alia*, 'evidence establish[es] an especially close relationship between the plaintiff and decedent, particularly in comparison to the normal interactions to be expected given the familial relationship; medical proof of severe pain, grief or suffering on behalf of the claimant [is presented]; and circumstances surrounding the terrorist attack [rendered] the suffering particularly more acute or agonizing.'").   *Fain*, 885 F. Supp. 2d at 82-83 (quoting *Oveissi*, 768 F. Supp. 2d at 26-27).   In conducting its analysis, the Court should look to "[t]estimony which describes a general feeling of permanent loss or change caused by decedent's absence or [m]edical treatment for depression and related affective disorders." *Flatow*, 999 F. Supp. at 31.   "Self-destructive behavior or a need for psychiatric treatment starting after the incident may also indicate a particularly powerful feeling of loss."   *Baker v. Socialist People's Libyan Arab Jamahiriya*, 775 F. Supp.2d 48, 83 (D.D.C. 2011) (citing *Valore*, 700 F.Supp.2d at 86).   "Courts have also recognized that in the long term, the sudden death of a loved one may manifest itself as 'a deep inner feeling of pain and anguish often borne in silence.'" *Flatow*, 999 F. Supp. at 31 (quoting *Connell v. Steel Haulers, Inc.*, 455 F.2d 688 (8th Cir. 1972).   Finally, courts have "correctly acknowledged that anguish is exacerbated when family members must live with the knowledge that their loved ones suffered horribly for an

extended period of time either at the hands of their tormentors or as a direct result of their terrorist acts." *Stethem*, 201 F. Supp. 2d at 90-91.

Based on such aggravating circumstances, courts in this Circuit have often awarded damages to immediate family members well in excess of the *Heiser* framework.[12]  As outlined below, Plaintiffs submit that circumstances warrant solatium damages in this case that exceed the *Heiser* framework as well.

### B.      Calculation of Solatium Damages for Immediate Family Members of Karbala Victims

As set forth in Appendices A through C, the immediate family members of the three Karbala victims should receive a 25% upward adjustment from the *Heiser* baseline solatium amounts to $6,250,000 for parents and $3,125,000 for siblings respectively to reflect the severe emotional distress suffered as a result of the abduction, torture, and murder of their sons and brothers.  A solatium award may be supported by "[t]estimony which describes a general feeling of permanent loss or change caused by decedent's absence," *Murphy*, 740 F. Supp. 2d at 79 (quoting *Flatow*, 999 F. Supp. at 31), or other "circumstances that appreciably worsen a claimant's pain and suffering, such as cases involving torture or kidnapping' of the party to whom extreme and outrageous conduct was directed." *Murphy*, 740 F. Supp. 2d at 79 (quoting

---

[12] *See Valore*, 700 F. Supp. 2d at 86 (awarding an upward adjustment of 25% from *Heiser* baseline due to the plaintiff's "uniquely acute suffering"); *Greenbaum v. Islamic Republic of Iran*, 451 F. Supp. 2d 90, 108 (D.D.C. 2006) (solatium damages increased by $1 million from the *Heiser* baseline due to aggravating circumstances); *Flanagan v. Islamic Republic of Iran*, 87 F. Supp. 3d 93, 118 (D.D.C. 2015) (awarding a 25% upward deviation from the *Heiser* baseline for each member of the victim's family where his "unexpected death was devastating," and the plaintiffs experienced "extraordinarily severe pain and suffering following [the victim's] death"); *Thuneibat v. Syrian Arab Republic*, 167 F. Supp. 3d 22, 52-53 (D.D.C. 2016) (awarding 25% increase from the *Heiser* baseline amount to parents and siblings of victims because of their emotional devastation); *Baker v. Socialist People's Libyan Arab Jamahiriya*, 775 F. Supp. 2d 48, 83 (D.D.C. 2011) (departing upward from *Heiser* baseline by 25% in light of evidence that the brother of the victim was so traumatized that he "turned to self-destructive behavior to cope with his pain"); *Oveissi v. Islamic Republic of Iran*, 768 F. Supp. 2d 16, 30 (D.D.C. 2011) ("cognizant of the several factors that indicate that a damage award larger than the one established by the *Heiser* scale is appropriate, the Court finds that the circumstances" surrounding the murder of plaintiff's grandfather "warrant[ed] a 50% enhancement" in the baseline solatium amount); *Estate of Brown v. Islamic Republic of Iran*, 872 F. Supp. 2d 37, 43 (D.D.C. 2012) (awarding a solatium damages award of $3 million to the sister of the deceased victim where she "suffered a nervous breakdown . . . for which she sought medical treatment and was prescribed medication for approximately one year").

*Greenbaum v. Islamic Republic of Iran*, 451 F. Supp. 2d 90, 108 (D.D.C. 2006)).   All of the immediate family member plaintiffs in this case had close relationships with the decedents and their suffering was made more acute by their knowledge of the horrific and violent nature of their loved one's death.   The depth of the pain and extreme sorrow experienced by the family members is evident on their faces in the videos from the decedents' funerals and continues still today.[13]

Plaintiffs' evidence in support of their claims for solatium damages are set forth in Appendix A for the family of Jacob Fritz and incorporated herein by reference, Appendix B for the family of Bryan Chism and incorporated herein by reference, Appendix C for the family of Shawn Falter and incorporated herein by reference. Below is a chart comparing these requested award amounts to other recent cases in this district awarding solatium damages to family members of individuals who like the three Karbala victims died at the time of a terrorist attack or relatively shortly thereafter without a prolonged period of captivity:

| Solatium Awards in Other FSIA Terrorism Cases Where Victim Was Killed During or Shortly After the Attack | | |
|---|---|---|
| **Case** | **Parent** | **Sibling** |
| *Elahi v. Islamic Republic of Iran*, 124 F. Supp. 2d 97, 111-112 (D.D.C. 2000) (victim murdered by agents of Iran on street in Paris, France) | n/a | $5,000,000 |
| *In re: Terrorist Attacks on September 11, 2001*, 2016 WL 6493158, at *5 (S.D.N.Y. Oct. 12, 2016) (adopted by *Hoglan v. Islamic Republic of Iran*, Dkt. 178, No. 11-cv-07550 (S.D.N.Y. Oct. 31, 2016) (victims killed during the September 11, 2001 attack in New York) | $8,500,000 | $4,245,000 |

---

[13] The funeral services for Jacob Fritz, Shawn Falter, and Ahmed Al-Taie are attached at Appendices A4, C4, and D4, respectively.

| Solatium Awards in Other FSIA Terrorism Cases Where Victim Was Killed During or Shortly After the Attack | | |
|---|---|---|
| **Case** | **Parent** | **Sibling** |
| *Oveissi v. Islamic Republic of Iran*, 768 F. Supp. 2d 16, 25, 30 (D.D.C. 2011) (victim assassinated in Paris) | $7,500,000[14] | n/a |
| *Thuneibat v. Syrian Arab Republic*, 167 F. Supp. 3d 22, 55 (D.D.C. 2016) (victim killed during suicide bombing in Amman, Jordan) | $6,250,000 | $3,125,000 |
| *Flanagan v. Islamic Republic of Iran*, 87 F. Supp. 3d 93, 118 n.29 (D.D.C. 2015) (U.S. service-member victim killed during bombing of USS Cole in Yemen) | $6,250,000 | $3,125,000 |
| *Wultz v. Islamic Republic of Iran*, 864 F. Supp. 2d 24, 40-41 (D.D.C. 2012) (victim injured during suicide bombing at Tel Aviv restaurant and died less than a month later) | $6,000,000 | $3,500,000 |
| **Proposed Solatium Damages for *Fritz v. Islamic Republic of Iran* - Immediate Family of Jacob Fritz, Bryan Chism, and Shawn Falter** | $6,250,000 | $3,125,000 |
| *Baker v. Socialist People's Libyan Arab Jamahiriya,* 775 F. Supp. 2d 48, 83-84 (D.D.C. 2011) (victim killed during execution-style shooting during airplane hijacking). | $5,000,000 | $3,125,000 |
| *Pugh v. Socialist People's Libyan Arab Jamahiriya*, 530 F. Supp. 2d 216, 266 (D.D.C. 2008) (victims killed in bombing of airliner) | $5,000,000 | $8,000,000 |
| *Stethem v. Islamic Republic of Iran,* 201 F. Supp. 2d 78, 91 (D.D.C. 2002) (U.S. service-member victim beaten, shot, and murdered during airplane hi-jacking) | $5,000,000 | $3,000,000 |

### C.    Additional Solatium Damages to Immediate Family Members of Ahmed Al-Taie

Additionally, in the case of an individual who is held in captivity for an extended period of time, it may be appropriate to increase the solatium award to recognize the exceptional anguish and grief that the family member experienced during the period the direct victim was in

---

[14] Plaintiff was actually a grandson, but court treated him as a son under the *Heiser* framework.

custody and tortured at the hands of their captors.  *See*, *e.g.*, *Kim v. Democratic People's Republic of Korea*, 87 F. Supp. 3d 286, 290 (D.D.C. 2015) (awarding son and brother of kidnapping victim $15,000,000 each in solatium damages amounting to $1 million dollars for each year victim had spent in captivity); *Anderson v. Islamic Republic of Iran*, 90 F.Supp.2d 107, 113 (D.D.C. 2000) (awarding $6,700,000 to the daughter of a torture victim held for approximately six and a half years).  As set forth in Appendix D, the immediate family members of Ahmed Al-Taie are entitled to an upward adjustment from the baseline award of solatium damages to $7 million for his parents and $5 million for his brothers to reflect the nearly five and half years he was missing and their knowledge that he was likely being tortured.  Plaintiffs' evidence in support of their claims for solatium damages are set forth in Appendix D for the family of Ahmed Al-Taie and incorporated herein by reference.

Below is a chart comparing these proposed awards to other recent cases involving the award of solatium damages to the immediate family members of individuals who spent an extended period of time in captivity before being murdered.

| Solatium Awards in FSIA Terrorism Cases Involving Victims Abducted for Extended Period of Time Before Being Murdered | | |
|---|---|---|
| **Case** | **Parent** | **Sibling** |
| *Kim v. Democratic People's Republic of South Korea*, 87 F. Supp. 3d 286, 290 (D.D.C. 2015) (awarding father and brother of kidnapped victim $15,000,000 in solatium damages or one million for each year of captivity) | $15,000,000 | $15,000,000 |
| *Foley v. Syrian Arab Republic*, 281 F. Supp. 3d 153 (D.D.C. 2017) (U.S. service-member Matthew Maupin found murdered four years after abduction) | $7,000,000 | n/a |
| **Proposed Solatium Award for *Fritz v. Islamic Republic of Iran* - Immediate Family of Ahmed Al-Taie** | **$7,000,000** | **$5,000,000** |

| *Kilburn v. Islamic Republic of Iran*, 699 F. Supp. 2d 136, 158 (D.D.C. 2010) (U.S. service-member victim held captive for 503 days before being murdered) | n/a | $5,000,000 |
|---|---|---|

## VI.   Plaintiffs' Requests for Solatium Damages are Reasonable in Light of Increased Costs of Living

As outlined above, the evidence in this case justifies solatium awards in excess of the *Heiser* framework.   In addition to such aggravating circumstances, Plaintiffs' requests for solatium awards above the *Heiser* framework is also justified by cost of living increases since that baseline was set in 2006.   Accordingly, Plaintiffs' solatium damages requests fall squarely within the heartland and median range of prior awards of damages in other FSIA terrorism-exception cases and are reasonable in light of increases in the costs of living since the time the initial attacks occurred in this case.

Courts across the United States have routinely adjusted awards based on standards set in prior cases for the effects of inflation.[15]   In *Dixon v. Agbai*, the court analyzed "compensatory damages awards in other comparable excessive force cases," No. 15-cv-850, 2016 WL 3702749, at *2-7 (S.D.N.Y. July 8, 2016), to determine "compensatory damages for… 'conscious pain and suffering, loss of enjoyment of life, and emotional damages'" suffered by the plaintiff. *Id.* at *4. But to arrive at a proper measure of damages in its current day determination; the court accounted and adjusted for the impact of inflation in its evaluation of prior comparable cases:

> The Court notes that it has considered all of the awards at their present dollar value adjusted for inflation using the calculator provided by the U.S. Bureau of Labor Statistics. See Consumer Price Index Inflation Calculator, U.S. DEP'T OF LABOR, BUREAU OF LABOR STATISTICS, http://www.bls.gov/data/inflation_calculator.htm (last visited June 13, 2016).   The amounts listed, however, are those actually awarded in each case.

---

[15] The practice is so routine, and often mentioned only in passing or in a footnote, that one could surmise that the inflationary adjustments are calculated without any official mention.

*Id.* at *5, n.3; Falzon *v. JPMorgan Chase & Co.*, 501 F. App'x 92, 94 (2d Cir. 2012) (adjusting comparable damage awards for inflationary impact); *Bravo v. United States*, 532 F.3d 1154, 1163 n.5 (11th Cir. 2008) ("The resulting award was for $ 1.7 million in 1990 dollars ($850,000 for the death of each child). . . . Adjusted for inflation, that award would be approximately $1,350,000 for each child in today's dollars.  So, if we were to use the *Grayson* case as our touchstone, we certainly would vacate the $ 20 million non-economic damages award Bravo and Rodriguez received in this case."); *Anthony v. Sec'y of HHS*, No. 14-680, 2016 WL 7733084, at *12 (Fed. Cl. Dec. 15, 2016) (utilizing a rate for national inflation to adjust the damage award given in a prior but comparable decision); *Alla v. Verkay*, 979 F. Supp. 2d 349,  372, 372 n.9 (E.D.N.Y. 2013) ("In considering similar cases, the Court uses the Bureau of Labor  Statistics's Inflation Calculator to estimate dollar equivalents."); *Cousin v. River W., L.P.*, No. 07-cv-576, 2013 WL 2248121, at *5 n.10 (M.D. La. May 21, 2013) (analyzing past awards to determine damages but noting "the award of $100,000 must be adjusted for  inflation"); *Ocampo v. Paper Converting Mach. Co.*, No. 02 C 4054, 2005 WL 2007144, at *4, 4 n.10 (N.D. Ill. Aug. 12, 2005) ("When adjusted for inflation, that is the  equivalent of a verdict in excess of $ 3.2 million in 2005."); *Ruhlmann v. Smith*, 323 F. Supp. 2d  356, 364 (N.D.N.Y. 2004) ("Adjusting only for inflation results in the following present-day  values of the verdicts in the above cases . . . .").  It is also clear from the foregoing decisions that the Bureau of Labor Statistics' Inflation Calculator is considered a reliable tool.

Courts have also adjusted comparable damage awards for inflationary impact in other procedural postures.  In *Menghi v. Hart*, the court made the same adjustment for inflation when analyzing the value of a comparable damage award in its analysis of the appropriateness of the damages awarded by the jury:

The case that presents the greatest similarities in the type of emotional distress alleged is *Sulkowska v. City of New York*, 129 F. Supp. 2d 274 (S.D.N.Y. 2001). In *Sulkowska*, plaintiff claimed that she was falsely arrested and imprisoned.  As to her emotional damages, plaintiff testified to constant fear that someone is trying to kill her and "never goes to bed without checking all the doors and looking in corners, under the bed, and in the closet." *Id*. at 306.  Her psychologist testified that she suffered from PTSD and that she was fearful of police, had feelings of helplessness, and difficulty sleeping. *Id*. at 305.  In addition, the award was appropriate even though the plaintiff had outside sources of stress, such as depression related to the death of her husband and her own surgery for a brain tumor, and there was no evidence that she could no longer work. *Id*. at 304. The Court concluded that plaintiff was severely, if not permanently, injured, and awarded her $275,000. *Id*. at 308-09.  *That 2001 award, adjusted for inflation, would be valued at approximately $334,000 at the time of the verdict in this case*. *See* CPI Inflation Calculator, U.S. Bureau of Labor Statistics, http://www.bls.gov/data/inflation_calculator.htm.

745 F. Supp. 2d 89, 109 (E.D.N.Y. 2010) (emphasis added); *see also Jean-Baptiste v. District of Columbia*, 931 F. Supp. 2d 1, 17 (D.D.C. 2013) (in the course of a remittitur analysis, finding that "[e]ven adjusting for inflation, this is far below the $3.5 million awarded here."); *Wells v. City of Chi.*, 896 F. Supp. 2d 725, 742, 742 n.1 (N.D. Ill. 2012) (deciding whether a jury award was excessive by considering an inflation adjusted prior remittitur of "$25,000 compensatory damages ($37,644 in 2012 dollars)"); *Wade v. Colaner*, No. 06-cv-3715, 2010 WL 5479629, at *29 (D.N.J. Dec. 28, 2010) ("As Plaintiff points out, the $375,000 compensatory damage award in *Evans*, when adjusted for inflation, is approximately equal to $462,000 in current dollars.").

The Second Circuit expressed the logic of adjustment for inflation in *DiSorbo v. Hoy*: "[i]n addition, when considering the sizes of the awards in earlier cases, we must take into account inflation, as the reasonable range for Rebecca DiSorbo's injuries today is higher than what it would have been ten years ago." 343 F.3d 172, 185 (2d Cir. 2003).

Even without the aggravating circumstances highlighted in this Memorandum and the accompanying Appendices, Plaintiffs' requested solatium damages awards are almost identical to the 2006 framework set forth in *Heiser v. Islamic Republic of Iran* when adjusted for inflation.

For example, applying the U.S. Department's Bureau of Labor Statistics Consumer Price Index

Calculator[16] to the standard *Heiser* framework solatium awards yields the following results:

| *Heiser* Framework Adjusted for Inflation | | | |
|---|---|---|---|
| Relationship of Plaintiff | 2006 Value | Current Value (using Bureau of Labor CPI Calculator)[17] | Plaintiffs' Damages Request |
| Parent | $5,000,000 | $6,233,588 | $6,250,000 |
| Sibling | $2,500,000 | $3,116,799 | $3,125,000 |

Plaintiffs submit this further supports their request for solatium awards slightly above the

*Heiser* framework.

## VII.    Plaintiffs are Entitled to Prejudgment Interest

When as here a statute is silent on the issue of pre-judgment interest, *see* 28 U.S.C. §

1605A(c), there is a federal common law rule that a court should ordinarily award it. *Motion*

*Picture Ass'n v. Oman*, 969 F.2d 1154, 1157 (D.C. Cir. 1992) (*citing Rodgers v. United States*,

332 U.S. 371, 373, (1947)).  The discretion to make such an award rests in the hands of the

district court subject to equitable considerations.  *Oldham v. Korean Air Lines Co.*, 127 F.3d 43,

54 (D.C. Cir. 1997) (*citing Motion Picture Ass'n*, 969 F.2d at 1157).  Prejudgment interest is

awarded not for the punitive value but to fully compensate the victims and to deny the

defendant the time value of the money  which rightly belonged to a plaintiff from the date of

the act of wrongdoing.   Such interest compensates a plaintiff for the lost time value of the

money.

---

[16] The Bureau of Labor CPI calculation is available at https://www.bls.gov/data/inflation_calculator.htm.
[17] The comparison is between December 2006 when the Heiser decision was issued and May 2018 (the most recent month for which data is available).

Courts in this district have regularly awarded prejudgment interest on compensatory damages in other similar cases brought against state sponsors of terrorism. *See*, *e.g.*, *Owens v. Republic of Sudan*, 71 F. Supp. 3d 252, 262 (D.D.C. 2014) (awarding prejudgment interest at the prime rate for each year); *Estate of Doe v. Islamic Republic of Iran*, 943 F. Supp. 2d 180, 184 (D.D.C. 2013) (same); *Reed v. Islamic Republic of Iran*, 845 F. Supp. 2d 204, 214-215 (D.D.C. 2012); *Belkin*, 667 F. Supp. 2d at 24*; Ben-Rafael v. Islamic Republic of Iran*, 540 F. Supp. 2d 39, 59 (D.D.C. 2008); *Pugh v. Socialist People's Libyan Arab Jamahiriya,* 530 F. Supp. 2d 216, 263 (D.D.C. 2008) ("courts in this Circuit have awarded prejudgment interest in cases where plaintiffs were delayed in recovering compensation for their injuries -- including, specifically, where such injuries were the result of targeted attacks perpetrated by foreign defendants"); *Dammarell v. Islamic Republic of Iran*, No. 01-cv-2224, 2006 WL 2583043, at *1, n.2 (D.D.C. Sept. 7, 2006) (awarding prejudgment interest to families of U.S. citizens killed in 1983 bombing of the United States Embassy in Beirut). To deny prejudgment interest would allow the state sponsor of terrorism to profit from its terrorist acts. *Pugh v. Socialist People's Libyan Arab Jamahiriya*, 530 F. Supp. 2d 216, 264 (D.D.C. 2008).

Moreover, every count of the Amended Complaint upon which Plaintiffs demonstrated Defendants' liability in this case, explicitly requests "pre-judgment interest" satisfying the requirements of Federal Rule of Civil Procedure 54(c). Dkt. 9 at 21-31. Thus, this case is distinguishable from other recent cases where Court have denied plaintiffs' request for prejudgment interest based on their failure to comply with the requirements of the rule. *See Gill v. Islamic Republic of Iran*, 249 F. Supp. 3d 88, 102 n.7 (D.D.C. 2017) (refusing to grant plaintiff prejudgment interest in FSIA case where it was not requested in the complaint); *Cohen v. Islamic Republic of Iran*, 268 F. Supp. 3d 19, 27 n.2 (D.D.C. 2017).

The award of prejudgment interest is also ubiquitous outside the FSIA context.  When pursuing relief on its own behalf, the United States seeks prejudgment interest to make itself whole.  *West Virginia v. U.S.,* 479 U.S. 305, 306 (1987) (agreeing with the governments' assertion that "[P]rejudgment interest is an element of complete compensation to the Federal Government."); *see also Insurance Co. of North America v. U.S.*, 951 F.2d 1244, 1246 (Fed. Cir. 1991) ("[T]he Government seeks no more than the value of the bond on its due date.  The assessment of prejudgment interest does not penalize the surety beyond the bond limit, but merely compensates the creditor for the surety's use of the money already due.").  The federal judiciary traditionally grants prejudgment interest to the United States, and other parties. *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 175-76 (1989) ("[P]rejudgment interest traditionally has been considered part of the compensation due plaintiff").

Given the Supreme Court's unambiguous stance on the matter, *West Virginia v. U.S.*, 497 U.S. at 306 (1987); *Osterneck v. Ernst & Whinney*, 489 U.S. at 175-76, there is broad consensus among the circuits that prejudgment interest is an integral component of compensatory damages. *See e.g.*, *Woodling v. Garret Corp.*, 813 F.2d 543, 559-60 (2d Cir. 1987) ("[t]he purpose of the [wrongful death] statute is to compensate for pecuniary injuries suffered by the distributees of decedent's estate.   The prejudgment interest provision implements this goal by ensuring that the distributes are compensated for the time value of the income stream the decedent would have earned between death and the entry of judgment. . . .") (alteration in original) (citations and internal quotations omitted) (quoting *Lin v. McDonnell Douglas Corp.,* 742 F.2d 45, 51–52 (2d Cir. 1984)).   "[I]nterest compensates for the time value of money, and thus is often necessary for full compensation."  *Oldham v. Korean Air Lines Co., Ltd.*, 127 F.3d 43, 54 (D.C. Cir. 1997)

(quoting *Motion Picture Ass'n of Amer., Inc. v. Oman,* 969 F.2d 1154, 1157 (D.C. Cir. 1992)) (granting prejudgment interest in a wrongful death suit).

"The D.C. Circuit has explained that the prime rate—the rate banks charge for short-term, unsecured loans to creditworthy customers—is the most appropriate measure of prejudgment interest." *Owens*, 71 F. Supp. 3d at 262 (citing *Forman v. Korean Air Lines Co.*, 84 F.3d 446, 450-451 (D.C. Cir. 1996). Accordingly, "this Circuit has approved an award of prejudgment interest 'at the prime rate for each year between the accident and the entry of judgment.'" *Id.* (quoting *Forman*, 84 F.3d at 450). In a recent 1605A decision later affirmed by the D.C. Circuit, the district court in *Owens* applied this standard using a multiplier derived from the Federal Reserve's historical prime rate data to adjust the base compensatory damages award. *See Owens*, 71 F. Supp. 3d at 262 & n.7 (*citing* Bd. of Governors of the Fed. Reserve Sys. Historical Data, available at http:// www.federalreserve.gov/releases/h15/data.htm). Plaintiffs followed the precise method for calculating the interest rate multiplier described in detail in the *Owens* court's decision. *Id.* Utilizing this same methodology and the same data set for the relevant period, the proposed total awards for each Plaintiff including prejudgment interest are set forth in the chart below:

| Proposed Awards for Each Plaintiff Adjusted for Prejudgment Interest | | |
|---|---|---|
| **Plaintiff** | **Proposed Base Compensatory Damages Award** | **Award with Prejudgment Interest[18]** |
| Estate of Jacob Fritz | $7,594,660 | $12,227,402.60 |

---

[18] The interest rates utilized account for the period between the original attack and the date of judgment. Thus, for the Al-Taie family the multiplier is based on the prime rates from Mr. Al-Taie's abduction in 2006 through 2018 while the multiplier for the remaining families relies on the prime rate for 2007 (the date of the Karbala attack) through 2018. All multipliers were generated using the Federal Reserve historical data for prime rates available at http:// www.federalreserve.gov/releases/h15/data.htm. The underlying calculations are set forth in an Excel spreadsheet on the enclosed USB drive.

| Proposed Awards for Each Plaintiff Adjusted for Prejudgment Interest | | |
|---|---|---|
| **Plaintiff** | **Proposed Base Compensatory Damages Award** | **Award with Prejudgment Interest[18]** |
| Daniel Fritz | $3,125,000 | $5,031,250 |
| Ethan Fritz | $3,125,000 | $5,031,250 |
| Estate of Lyle Fritz | $6,250,000 | $10,062,500 |
| Noala Fritz | $6,250,000 | $10,062,500 |
| **Fritz Family Total** | **$26,344,660** | **$42,414,902.60** |
| Estate of Bryan Chism | $6,059,404 | $9,755,640.44 |
| Danny Chism | $6,250,000 | $10,062,500 |
| Elizabeth Chism | $6,250,000 | $10,062,500 |
| Julie Chism | $3,125,000 | $5,031,250 |
| Vanessa Chism | $1,500,000 | $2,415,000 |
| **Chism Family Total** | **$23,184,404** | **$37,326,890.44** |
| Estate of Shawn Falter | $5,951,882 | $9,582,530.02 |
| Linda Falter | $6,250,000 | $10,062,500 |
| Marjorie Falter | $3,125,000 | $5,031,250 |
| Russell C. Falter | $3,125,000 | $5,031,250 |
| Russell J. Falter | $6,250,000 | $10,062,500 |
| Andrew Lucas | $3,125,000 | $5,031,250 |
| David Lucas | $3,125,000 | $5,031,250 |
| Timothy Lucas | $3,125,000 | $5,031,250 |
| Marsha Novak | $3,125,000 | $5,031,250 |

| Proposed Awards for Each Plaintiff Adjusted for Prejudgment Interest | | |
|---|---|---|
| Plaintiff | Proposed Base Compensatory Damages Award | Award with Prejudgment Interest[18] |
| Jason Sackett | $3,125,000 | $5,031,250 |
| John Sackett | $3,125,000 | $5,031,250 |
| **Falter Family Total** | **$43,451,882** | **$69,957,530.02** |
| Estate of Ahmed Al-Taie | $12,263,717 | $21,338,867.58 |
| Bashar Al-Taie | $5,000,000 | $8,700,000 |
| Kousay Al-Taie | $7,000,000 | $12,180,000 |
| Nawal Al-Taie | $7,000,000 | $12,180,000 |
| Hathal K. Taie | $5,000,000 | $8,700,000 |
| **Al-Taie Family Total** | **$36,263,717** | **$63,098,867.58** |

## VIII.  Plaintiffs are Entitled to Exemplary Damages

### A.  Overview

Title 28, United States Code, Section 1605A(c) permits the award of punitive or exemplary damages against a state sponsor of terrorism.  Accordingly, Plaintiffs request an award of punitive or exemplary damages to each family in an amount equal to twice the amount of compensatory damages to be apportioned equally amongst each set of plaintiffs:

| Proposed Exemplary or Punitive Damages Per Family | | |
|---|---|---|
| Family | Total Compensatory Damages | Proposed Punitive Damages |
| Al-Taie Family | $36,263,717 | $72,527,434 |
| Chism Family | $23,184,404 | $46,368,808 |
| Falter Family | $43,451,882 | $86,903,764 |
| Fritz Family | $26,344,660 | $52,689,320 |

Punitive damages "serve to punish and deter the actions" for which they are awarded. *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 87 (D.D.C. 2010) (citations omitted). "In determining the proper punitive damages award, courts evaluate four factors: '(1) the character of the defendants' act, (2) the nature and extent of harm to the plaintiffs that the defendants caused or intended to cause, (3) the need for deterrence, and (4) the wealth of the defendants.'" *Id.* (quoting *Acosta v. Islamic Republic of Iran*, 574 F. Supp. 2d 15, 30 (D.D.C. 2008)) (additional citations omitted).

All of the four factors above support a substantial award of punitive damages in this case. As detailed during the trial in this matter and described in the accompanying Appendices A through D, the hostage-takings, torture, and extrajudicial killings of Jacob Fritz, Bryan Chism, Shawn Falter, and Ahmed Al-Taie were horrific, egregious, and designed to have maximum public impact by instilling fear in those who dared to stand in the way of the policy aims of Iran and the IRGC. *See Bodoff v. Islamic Republic of Iran*, 424 F. Supp. 2d 74, 88–89 (D.D.C. 2006) (noting that "[t]he defendants' demonstrated policy of encouraging, supporting and directing a campaign of deadly terrorism is evidence of the monstrous character of the bombing that inflicted maximum pain and suffering on innocent.") (citation and quotation marks omitted). All four men were killed in an extraordinarily painful manner and their families were devastated by the conduct. As courts of this district have held repeatedly, "only a large amount of punitive damages can serve as an effective deterrent against future terrorist acts." *Bodoff*, 424 F. Supp. 2d

at 88 (quoting *Campuzano v. Islamic Republic of Iran*, 281 F. Supp. 2d 258, 278 (D.D.C. 2003)) (quotation marks omitted).  Finally, "Iran is a sovereign and has substantial wealth." *Bluth v. Islamic Republic of Iran*, 203 F. Supp. 3d 1, 25 (D.D.C. 2016) (citing *Weinstein v. Islamic Republic of Iran*, 184 F. Supp. 2d 13, 25 (D.D.C. 2002) (additional citations omitted).  Thus, the question is the appropriate amount of damages.

Courts in this district have applied different methodologies to calculate the appropriate amount of punitive damages ranging from a flat monetary award,[19] to applying a multiplier to the state sponsor's expenditures on terrorism over a relevant time period.  *See, e.g.*, *Valore*, 700 F. Supp. 2d at 88–90; *Heiser*, 659 F. Supp. 2d at 30–31; *Acosta*, 574 F. Supp. 2d at 31.  More recently, courts have applied a similar multiplier to the amount of compensatory damages awarded.  *See, e.g.*, *Gill v. Islamic Republic of Iran*, 249 F. Supp. 3d 88, 105-106 (D.D.C. 2017) (calculating punitive damages by multiplying compensatory damages by three); *Harrison v. Republic of Sudan*, 882 F. Supp. 2d 23, 50-51 (D.D.C. 2012) (using a factor of three); *Cohen v. Islamic Republic of Iran*, 268 F. Supp. 3d 19, 27-28 (D.D.C. 2017) (awarding punitive damages in the amount of twice compensatory damages).  Thus, Plaintiffs submit that under the circumstances of this case, the Court should award punitive damages against the Defendants at least in the amount of twice compensatory damages.  Both the attacks on the three Karbala victims and Ahmed Al-Taie were politically motivated attacks designed to instill maximum fear and terror in opponents of Iran and the IRGC.  The nature of the attacks was brutal, and the suffering imposed on the victims and their families substantial.  And the victims were specifically targeted because of their service to the United States.

---

[19] *Gates v. Syrian Arab Republic*, 580 F. Supp. 2d 53, 75 (D.D.C. 2008) (awarding the families of victims a flat amount of $150 million., *aff'd*, 646 F.3d 1 (D.C. Cir. 2011)

### B.       Impact of Recent *Owens* Decision

Plaintiffs acknowledge the D.C. Circuit's recent decision regarding punitive damages under 1605A in *Owens v. Republic of Sudan*, 864 F.3d 751, 818 (D.C. Cir. 2017), which Plaintiffs submit is wholly inconsistent with the Supreme Court's prior decision in *Republic of Austria v. Altmann*, 541 U.S. 677 (2004), and which is currently the subject of a pending petition for a writ of certiorari.  As an initial matter, the *Owens* decision has no impact on the availability of punitive damages to the Al-Taie family since Ahmed Al-Taie was murdered in late 2009—long after the enactment and effective date of Section 1605A.  Thus, the Special Master should recommend and the Court should award punitive damages to Mr. Al-Taie's estate and his immediate family members in the amounts requested.

With respect to the estates and families of Jacob Fritz, Bryan Chism, and Shawn Falter who were murdered in 2007 prior to the enactment of 1605A, Plaintiffs request that the Special Master instead make a recommendation with respect to the appropriate calculation of punitive damages which the Court can evaluate and consider once the *Owens* decision is reversed.  In *Republic of Austria v. Altmann*, the Supreme Court held unequivocally that the FSIA explicitly applies to preenactment conduct by foreign states, explaining: "we find clear evidence that Congress intended the Act to apply to preenactment conduct."  541 U.S. 677, 697 (2004).  The D.C. Circuit's decision in *Owens* erroneously ignored the Supreme Court's binding precedent in *Altmann* and the fact that through Section 1605A(c), Congress expressly authorized "punitive damages" without temporal limitation.  Indeed, the enacting legislation (codified as a note to § 1605A) provides that "[t]he amendments made by this section shall apply to *any claim* arising under section 1605A of title 28, United States Code."  Note to Section 1605A, 2008 National Defense Authorization Act, Pub. L. No. 110–181, § 1083(c), 122 Stat. 3, 342–43 ("2008 NDAA") (emphasis added).  Indeed, the 2008 NDAA explicitly repealed and replaced the

preexisting jurisdictional immunity provision allowing similar actions against state-sponsors of terrorism and replaced it with the new Section 1605A.  2008 NDAA § 1083(b)(1)(A)(iii).  As perhaps the best evidence of Congress' intent that the new provision apply retroactively, it explicitly allowed plaintiffs with pending terrorism actions pursuant to 28 U.S.C. § 1605(a)(7) to refile them under Section 1605A.  2008 NDAA § 1083(c)(2).[20]

In sum, pursuant to the Supreme Court's decision in *Altmann*, all provisions of Section 1605A including those relating to punitive damages should be applied retroactively to any timely filed action.  The *Owens* decision was in error and the Special Master should recommend a punitive damages award with respect to the three Karbala victims pending the Supreme Court's review of that decision.

## IX.   Conclusion

Based on the facts and law set forth above, Plaintiffs respectfully request that the Special Master find and recommend to the Court that the Court award each of the family member Plaintiffs (excluding Bashar Al-Taie) damages for their solatium losses under 28 U.S.C. § 1605A(c); award Bashar Al-Taie damages for his emotional distress under the law of the District of Columbia; award to the Estates of Jacob Fritz, Johnathan Bryan Chism, Shawn Falter, and Ahmed Al-Taie damages for their economic losses and pain and suffering under 28 U.S.C. § 1605A(c); and award appropriate prejudgment interest thereon; and make an award to each of the

---

[20] Indeed, at the time of Section 1605A's enactment in 2008, the concept of awarding punitive damages arising from state sponsored terrorism was not a new one.  The 1996 Flatow Amendment authorized the award of punitive damages against "an official, employee, or agent of a foreign state designated as a state sponsor of terrorism . . . acting within the scope of his or her office, employment, or agency."  Pub. L. No. 104–208, § 589, 110 Stat. 3009–172 (1996) (formerly codified at 28 U.S.C. § 1605 note (repealed 2008)).  Although the *Flatow* Amendment was repealed in 2008 with the enactment of Section 1605A, to the extent that the punitive damages provision of 1605A does not apply retroactively, the IRGC as "an agent" of Iran could be held liable for punitive damages for the January 2007 Karbala attack under the then operative 28 U.S.C. § 1605(a)(7).  *See, e.g.*, *Kilburn v. Republic of Iran*, 277 F. Supp. 2d 24, 44 (D.D.C. 2003) (awarding punitive damages against Libyan intelligence agency despite conclusion it arguably was part of the state itself under D.C. Circuit law), *abrogated on other grounds by Cicippio-Puleo v. Islamic Republic of Iran*, 353 F. 3d 1024 (D.C. Cir. 2004); *Stethem v. Islamic Republic of Iran*, 201 F. Supp. 2d 78, 92 (D.D.C. 2002) (awarding punitive damages against the Iranian Ministry of Information and Security even though punitive damages were not available against Iran itself).

Plaintiffs, in such amount as the Court deems appropriate and just, an assessment of punitive damages against the Defendants under 28 U.S.C. § 1605A(c).  The specific damages requests as to each individual plaintiff are set forth in Appendices A through D.

DATED:  July 23, 2018                                        Respectfully Submitted,

/s/ Steven R. Perles
Steven R. Perles (No. 326975)
Edward MacAllister   (No. 494558)
Joshua K. Perles (No. 1031069)
Emily Amick (No. 242018)
PERLES LAW FIRM, PC
1050 Connecticut Ave, NW
Suite 500
Washington, DC 20036
Telephone: 202-955-9055


/s/ Steven W. Pelak
Steven W. Pelak (No. 408744)
Michael O'Leary (No. 1014610)
Gwen S. Green (No. 980495)
Holland & Hart LLP
975 F Street, N.W.
9th Floor
Washington, DC 20004
Telephone: 202-654-6929

*Attorneys for Plaintiffs*