## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NOALA FRITZ *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No.: 15-456 (RDM) |
| ISLAMIC REPUBLIC OF IRAN *et al*, | |
| Defendants. | |

## PLAINTIFFS' MOTION FOR APPROVAL OF DAMAGES AWARD UNDER FRCP 53(f) AND ENTRY OF FINAL JUDGMENT AS TO THE U.S. NATIONAL PLAINTIFFS UNDER FRCP 54(b)

Pursuant to Fed. R. Civ. P. 53(f), Plaintiffs respectfully submit this Motion for Approval of Damages Award and Entry of Final Judgment as to the U.S. national Plaintiffs. Plaintiffs agree entirely with the Special Master's Report and Recommendation Regarding Compensatory Damages ("Report") (Dkt. 90) in all material aspects. Accordingly, Plaintiffs request that the Court: (1) adopt the Special Master's findings and recommendations on compensatory damages as to all the U.S. national Plaintiffs;[1] (2) award punitive damages to all Plaintiffs who received compensatory damages; and (3) certify entry of a final judgment as to the Court's findings on liability and damages as to all U.S. national Plaintiffs pursuant to Federal Rule of Civil Procedure 54(b).

## I.    BACKGROUND

On November 5, 2015, Plaintiffs filed the Amended Complaint in this civil action. (Dkt. 9). Plaintiffs served the Islamic Republic of Iran ("Iran") on January 31, 2017. (Dkt. 19). Plaintiffs served Iran's Islamic Revolutionary Guard Corps' ("IRGC") on December 10, 2017. (Dkt. 30). The Clerk of Court entered defaults against the Iran on August 14, 2017 (Dkt. 23),

---

[1] The term "U.S. national Plaintiffs" include all plaintiffs in this action except Bashar Al-Taie.

and the IRGC on March 27, 2018 (Dkt. 39), after the Defendants failed to answer or otherwise respond to the Amended Complaint.  During the evidentiary hearing held in the above-captioned matter from April 10 through April 13, 2018, Plaintiffs presented substantial documentary and testimonial evidence to demonstrate the liability of Iran and the IRGC for the hostage taking, torture, and extrajudicial killings of Jacob Fritz, Shawn Falter, Johnathan Bryan Chism, and Ahmed Al-Taie.

On August 2, 2018, the Court granted in part and denied in part Plaintiffs' motion for default judgment, granting "Plaintiffs' motion for the entry of a default judgment against the Islamic Republic of Iran and the IRGC . . . as to the U.S. national plaintiffs" and denying "without prejudice as to Bashar Al-Taie." Dkt.  89, Memorandum Opinion, August 2, 2018 at 2-3, 67 ("Liability Opinion").  The Court entered a separate order on August 1, 2018 appointing Deborah Greenspan as Special Master to hear the damages claims of the estates of the four direct victims and the U.S. national plaintiffs and to report to the Court regarding the appropriate award.  (Dkt. 87).  On August 13, 2018, Ms. Greenspan issued her Report, (Dkt. 90), recommending compensatory damages awards to each of the Plaintiffs in amounts set forth in the chart attached as Exhibit A to this motion.

## II.   REQUESTS FOR RELIEF

### A.   Adoption of Special Master's Report

Special Master Greenspan reviewed the record in this case upon which the Court based its liability findings, and also received additional evidence from Plaintiffs.  On August 13, 2018, Special Master Greenspan issued a damages report for Plaintiffs.  (Dkt. 90).  Plaintiffs respectfully request that the Court adopt the Special Master' Report and enter final judgment in favor of Plaintiffs and against Defendants in the total amount of $195,568,214 as to all U.S.

Plaintiffs and as to each individual U.S. Plaintiff as set forth in the Summary of Recommendations on page 55 of the Report (attached hereto as Exhibit A to this motion). A proposed order regarding damages is attached at Exhibit B.

### B.     Request for Punitive Damages

#### 1.     Overview

For the reasons set forth in more detail in Plaintiffs' Damages Memoranda (Dkts. 70, 71, 74, 77, 80), Plaintiffs respectfully request an award of punitive or exemplary damages to each family in an amount equal to twice the amount of compensatory damages to be apportioned equally amongst each set of plaintiffs. Title 28, United States Code, Section 1605A(c) permits the award of punitive or exemplary damages against a state sponsor of terrorism. Punitive damages "serve to punish and deter the actions" for which they are awarded. *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 87 (D.D.C. 2010) (citations omitted). "In determining the proper punitive damages award, courts evaluate four factors: '(1) the character of the defendants' act, (2) the nature and extent of harm to the plaintiffs that the defendants caused or intended to cause, (3) the need for deterrence, and (4) the wealth of the defendants.'" *Id.* (quoting *Acosta v. Islamic Republic of Iran*, 574 F. Supp. 2d 15, 30 (D.D.C. 2008)) (additional citations omitted).

All of the four factors above support a substantial award of punitive damages in this case. As detailed during the trial in this matter and described in Plaintiffs Damages Memoranda (Dkts. 70, 71, 74, 77, 80), the hostage-takings, torture, and extrajudicial killings of Jacob Fritz, Bryan Chism, Shawn Falter, and Ahmed Al-Taie were horrific, egregious, and designed to have maximum public impact by instilling fear in those who dared to stand in the way of the policy aims of Iran and the IRGC. *See Bodoff v. Islamic Republic of Iran*, 424 F. Supp. 2d 74, 88–89 (D.D.C. 2006) (noting that "[t]he defendants' demonstrated policy of encouraging, supporting

and directing a campaign of deadly terrorism is evidence of the monstrous character of the bombing that inflicted maximum pain and suffering on innocent.") (citation and quotation marks omitted).  All four men were killed in an extraordinarily painful manner and their families were devastated by the conduct.  As courts of this district have held repeatedly, "only a large amount of punitive damages can serve as an effective deterrent against future terrorist acts."  *Bodoff*, 424 F. Supp. 2d at 88 (quoting *Campuzano v. Islamic Republic of Iran*, 281 F. Supp. 2d 258, 278 (D.D.C. 2003)) (quotation marks omitted).  Finally, "Iran is a sovereign and has substantial wealth."  *Bluth v. Islamic Republic of Iran*, 203 F. Supp. 3d 1, 25 (D.D.C. 2016) (citing *Weinstein v. Islamic Republic of Iran*, 184 F. Supp. 2d 13, 25 (D.D.C. 2002) (additional citations omitted).  Thus, the question is the appropriate amount of damages.

Courts in this district have applied different methodologies to calculate the appropriate amount of punitive damages ranging from a flat monetary award,[2] to applying a multiplier to the state sponsor's expenditures on terrorism over a relevant time period.  *See*, *e.g*., *Valore*, 700 F. Supp. 2d at 88–90; *Heiser*, 659 F. Supp. 2d at 30–31; *Acosta*, 574 F. Supp. 2d at 31.  More recently, courts have applied a similar multiplier to the amount of compensatory damages awarded.  *See*, *e.g*., *Gill v. Islamic Republic of Iran*, 249 F. Supp. 3d 88, 105-106 (D.D.C. 2017) (calculating punitive damages by multiplying compensatory damages by three); *Harrison v. Republic of Sudan*, 882 F. Supp. 2d 23, 50-51 (D.D.C. 2012) (using a factor of three); *Cohen v. Islamic Republic of Iran*, 268 F. Supp. 3d 19, 27-28 (D.D.C. 2017) (awarding punitive damages in the amount of twice compensatory damages).  Thus, Plaintiffs submit that under the circumstances of this case, the Court should award punitive damages against the Defendants at least in the amount of twice compensatory damages.  Both the attacks on the three Karbala

---

[2] *Gates v. Syrian Arab Republic*, 580 F. Supp. 2d 53, 75 (D.D.C. 2008) (awarding the families of victims a flat amount of $150 million., *aff'd*, 646 F.3d 1 (D.C. Cir. 2011).

victims and Ahmed Al-Taie were politically motivated attacks designed to instill maximum fear and terror in opponents of Iran and the IRGC. The nature of the attacks was brutal, and the suffering imposed on the victims and their families substantial. And the victims were specifically targeted because of their service to the United States.

### 2.    Impact of Recent *Owens* Decision

Plaintiffs acknowledge the D.C. Circuit's recent decision regarding punitive damages under § 1605A in *Owens v. Republic of Sudan*, 864 F.3d 751, 818 (D.C. Cir. 2017), which Plaintiffs submit is wholly inconsistent with the Supreme Court's prior decision in *Republic of Austria v. Altmann*, 541 U.S. 677 (2004), and which is currently the subject of a pending petition for a writ of certiorari.[3]   As an initial matter, the *Owens* decision has no impact on the availability of punitive damages to the Al-Taie family since Ahmed Al-Taie was murdered in late 2009—long after the enactment and effective date of Section 1605A, which occurred in 2008. Accordingly, for the reasons set forth in Plaintiffs' Damages Memorandum (D.E. 70 at 30-31), Plaintiffs respectfully request that the Court award punitive damages to Mr. Al-Taie's estate and his immediate family members of at least twice the amount of compensatory damages

---

[3] In *Republic of Austria v. Altmann*, the Supreme Court held unequivocally that the FSIA explicitly applies to preenactment conduct by foreign states, explaining: "we find clear evidence that Congress intended the Act to apply to preenactment conduct." 541 U.S. 677, 697 (2004). The D.C. Circuit's decision in *Owens* erroneously ignored the Supreme Court's binding precedent in *Altmann* and the fact that through Section 1605A(c), Congress expressly authorized "punitive damages" without temporal limitation. Indeed, the enacting legislation (codified as a note to § 1605A) provides that "[t]he amendments made by this section shall apply to *any claim* arising under section 1605A of title 28, United States Code." Note to Section 1605A, 2008 National Defense Authorization Act, Pub. L. No. 110–181, § 1083(c), 122 Stat. 3, 342–43 ("2008 NDAA") (emphasis added). Indeed, the 2008 NDAA explicitly repealed and replaced the preexisting jurisdictional immunity provision allowing similar actions against state-sponsors of terrorism and replaced it with the new Section 1605A. 2008 NDAA § 1083(b)(1)(A)(iii). As perhaps the best evidence of Congress' intent that the new provision apply retroactively, it explicitly allowed plaintiffs with pending terrorism actions pursuant to 28 U.S.C. § 1605(a)(7) to refile them under Section 1605A. 2008 NDAA § 1083(c)(2). In sum, pursuant to the Supreme Court's decision in *Altmann*, all provisions of Section 1605A including those relating to punitive damages should be applied retroactively to any timely filed action. The *Owens* decision was in error and the Court should award punitive damages with respect to the three Karbala victims pending the Supreme Court's review of that decision.

*See* D.E. 70 at 30-31); se*e Cohen v. Islamic Republic of Iran*, 268 F. Supp. 3d 19, 27-28 (D.D.C. 2017) (awarding punitive damages in the amount of twice compensatory damages).

Plaintiffs acknowledge that until the Supreme Court reverses the D.C. Circuit's decision in *Owens,* the Court cannot award punitive damages to the estates and families of Jacob Fritz, Bryan Chism, and Shawn Falter as to Iran itself because the three men were murdered in 2007 prior to the enactment of 1605A.  However, Plaintiffs still request that the Court award punitive damages against Defendant IRGC.

At the time of Section 1605A's enactment in 2008, the concept of awarding punitive damages arising from state sponsored terrorism was not a new one.  The 1996 Flatow Amendment authorized the award of punitive damages against "an official, employee, or agent of a foreign state designated as a state sponsor of terrorism . . . acting within the scope of his or her office, employment, or agency."  Pub. L. No. 104–208, § 589, 110 Stat. 3009–172 (1996) (formerly codified at 28 U.S.C. § 1605 note (repealed 2008)).

Although the *Flatow* Amendment was repealed in 2008 with the enactment of Section 1605A, 28 U.S.C. § 1606 still explicitly provides that "[a]s to any claim for relief with respect to which a foreign state is not entitled to immunity under section 1605 or 1607 of this chapter, the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances; but a foreign state *except for an agency or instrumentality thereof shall not be liable for punitive damages.*"  28 U.S.C. § 1606 (emphasis added).  Plaintiffs acknowledge that the Court concluded in its Liability Decision that the IRGC was part of Iran itself rather than an agent or instrumentality.  (Dkt. 89 at 39, n.12).  However, courts in this district have held that similar governmental entities could be held liable for punitive damages under the previously operative 28 U.S.C. § 1605(a)(7) even where they did not otherwise meet

the D.C. Circuit's test for what constitutes a separate agent or instrumentality.  *See*, *e.g.*, *Kilburn v. Republic of Iran*, 277 F. Supp. 2d 24, 44 (D.D.C. 2003) (awarding punitive damages against Libyan intelligence agency despite conclusion it arguably was part of the state itself under D.C. Circuit law), *abrogated on other grounds by Cicippio-Puleo v. Islamic Republic of Iran*, 353 F. 3d 1024 (D.C. Cir. 2004); *Stethem v. Islamic Republic of Iran*, 201 F. Supp. 2d 78, 92 (D.D.C. 2002) (awarding punitive damages against the Iranian Ministry of Information and Security even though punitive damages were not available against Iran itself).  Accordingly, in the alternative, Plaintiffs request the award of punitive damages as to Defendant IRGC.

### C.    Request for Rule 54(b) Certification

In its August 2, 2018 Liability Opinion, the Court granted a default judgment with respect to liability on the claims of the U.S. national plaintiffs and denied without prejudice the state law claims of the single, non-U.S. national plaintiff, Bashar Al-Taie.  (Dkt. 89 at 2).  Thus, a final judgment cannot be issued as to Bashar Al-Taie at this time.  Plaintiffs, therefore, move for a certification pursuant to Federal Rule of Civil Procedure 54(b) and the entry of final judgment as to all U.S. national Plaintiffs.

"Federal Rule of Civil Procedure 54(b) governs the entry of final judgment in a case involving multiple claims and parties."  *Kaplan v. Central Bank of the Islamic Republic of Iran*, 16-7122, -- F.3d --, 2018 WL 3490072, at *2 (D.C. Cir. July 20, 2018) (citing Fed. R. Civ. P. 54(b)).  In order to enter 'a final judgment as to one or more, but fewer than all, claims or parties,' a district court *must 'expressly determine[ ] that there is no just reason for delay.'" Id.* (emphasis added).  "Before certifying a judgment as final pursuant to Rule 54(b), the district court must make certain express determinations on the record, without which a federal court of

appeals does not acquire jurisdiction." *Ben-Rafael v. Islamic Republic of Iran*, 718 F. Supp. 2d 25, 33 (D.D.C. 2010) (citing *Johnson v. Mukasey*, 248 F.R.D. 347, 354 (D.D.C. 2008)).

"First, the order in question must be a final judgment, as in 'an ultimate disposition of an individual claim entered in the course of a multiple claims action' and 'a judgment in the sense that it determines a claim for relief.'" *Id.* (quoting *Bldg. Indus. Ass'n of Superior Calif. v. Babbitt*, 161 F.3d 740, 743 (D.C. Cir. 1998). "Second, the court must determine that there is no just reason for delay, 'tak[ing] into account judicial administrative interests' including 'whether the claims under review [are] separable from the others remaining to be adjudicated and whether the nature of the claims already determined [is] such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals.'" *Id.* The district court has wide discretion in determining whether a case meets this standard.

Here, the Court's anticipated rulings on both liability and damages will finally resolve all claims for relief of all of the U.S. national Plaintiffs. All of the U.S. national Plaintiffs sought relief under the federal cause of action, found at 28 U.S.C. § 1605A(c). The only pending issues will relate to the state law claims of single claimant, Bashar Al-Taie which are legally distinct. The ultimate resolution of Bashar Al-Taie's state law claims will have no impact on the claims brought under the federal law cause of action. Accordingly, there is "no just reason for delay" in entering final judgment as to the U.S. national Plaintiffs.

Moreover, as the Court is well aware there are substantial factual reasons why justice supports the entry of a final judgment as to the U.S. national plaintiffs at this time. As outlined in prior pleadings and statements to the Court, Plaintiffs seek to participate in the Fund created by the United States Victims of State Sponsored Terrorism Act. *See* 34 U.S.C. § 20144. The deadline for submission to the Fund is September 14, 2018 and that deadline is unlikely to be extended. The Victims Act Fund currently holds substantial funds in the current cycle (at least $650 million) and a

distribution in January 2019 will be mandatory under the statute. (*See* Dkt. 62 at 3). Thus, there is no assurance of future distributions in 2020 or thereafter. A delay in entry of a final judgment as to the U.S. national Plaintiffs at this time would deny Plaintiffs the ability to participate in the Fund during this cycle. In sum, however the Court decides any remaining issues as to these Plaintiffs, Plaintiffs request that the Court direct and certify entry of a final judgment as to the Court's findings on liability and damages as to all U.S. national Plaintiffs pursuant to Federal Rule of Civil Procedure 54(b). A proposed order regarding certifying entry of final judgment as to the Court's findings on liability and damages as to all U.S. national Plaintiffs pursuant to Federal Rule of Civil Procedure 54(b) is attached at Exhibit C.

## III.   CONCLUSION

For the reasons outlined above, Plaintiffs respectfully request that the Court: (1) adopt the Special Master's findings and recommendations on compensatory damages; (2) award punitive damages to all Plaintiffs who received compensatory damages; and (3) certify entry of a final judgment as to the Court's findings on liability and damages as to all U.S. national Plaintiffs pursuant to Federal Rule of Civil Procedure 54(b).

Dated:  August 14, 2018                                  Respectfully Submitted,


                                                         /s/ Steven R. Perles
                                                         Steven R. Perles (No. 326975)
                                                         Edward MacAllister   (No. 494558)
                                                         Joshua K. Perles (No. 1031069)
                                                         Emily Amick (No. 242018)
                                                         PERLES LAW FIRM, PC
                                                         1050 Connecticut Ave, NW
                                                         Suite 500
                                                         Washington, DC 20036
                                                         Telephone: 202-955-9055
                                                         Telefax: 202-772-3101


                                                         /s/ Steven W. Pelak

Steven W. Pelak (No. 408744)
Michael O'Leary (No. 1014610)
Gwen S. Green (No. 980495)
Holland & Hart LLP
975 F Street, N.W.
9th Floor
Washington, DC 20004
Telephone: 202-654-6929

*Attorneys for Plaintiffs*

10