**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

NOALA FRITZ, *et al.*,

      *Plaintiffs*,

v.

ISLAMIC REPUBLIC OF IRAN, *et al.*,

      *Defendants*.

Civil Action No. 15-456 (RDM)

## AMENDED MEMORANDUM OPINION

This matter is before the Court on Plaintiff Bashar Al-Taie's renewed motion for entry of default. Dkt. 108. As the Court explained in its prior opinion, Plaintiffs brought his action against Defendants the Islamic Republic of Iran and the Islamic Revolutionary Guard Corps (collectively, "Iran"), seeking compensatory and punitive damages for the injuries suffered as a result of "the abductions and murders of four U.S. soldiers serving in Iraq," including, as relevant here, the October 2006 abduction, hostage-taking, and murder of Staff Sergeant Ahmed Al-Taie. *Fritz v. Islamic Republic of Iran*, 320 F. Supp. 3d 48, 55 (D.D.C. 2018) ("*Fritz I*".). In *Fritz I*, the Court held that it has subject matter jurisdiction under the state-sponsored terrorism exception to the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605A, *id.* at 86, and that it has personal jurisdiction over both Defendants, *id.* at 89. The Court further held that Plaintiffs had established by a preponderance of the evidence that Iran provided material support to a network of Iraqi Shia militias known as Asaib Ahl Al-Haq ("AAH") and that AAH used that support to take Staff Sergeant Al-Taie hostage and to torture and kill him, in violation of 18 U.S.C. § 2339A. *Id.* at 78–86. Based on these findings, the Court held that the estate of Staff Sergeant

Al-Taie and Staff Sergeant Al-Taie's father, mother, and brother Hathal were all entitled to relief. *Id.* at 87.

The Court went on to explain, however, that it was not yet persuaded that Staff Sergeant Al-Taie's brother Bashar was entitled to relief because he "is not a U.S. national" and therefore "is not entitled to relief under" the federal cause of action created in the statute, 28 U.S.C. § 1605A(c)," and because he had failed "to establish that he is entitled to relief based on [his] state law claims," *id.* at 87, 91–92. Plaintiff Bashar Al-Taie now renews his motion for the entry of default, relying solely on the claim that he is entitled to relief under District of Columbia law for Defendants' intentional infliction of emotional distress ("IIED"). Dkt. 108. For the reasons explained below, the Court agrees, and, accordingly, will grant Bashar Al-Taie's renewed motion for entry of default and will enter an award of damages.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Court has previously made extensive findings of fact regard Sergeant Al-Taie's abduction, torture, and murder, all of which apply here with equal force. *Fritz I*, 320 F. Supp. 3d at 57–75. The Court will briefly summarize only those facts relevant to the present motion.

Plaintiff Bashar Al-Taie is the brother of Staff Sergeant Ahmed Al-Taie, a U.S. Service member who was abducted while deployed to Baghdad, held hostage, tortured, and ultimately murdered. *See id.* at 78–86. As relevant here, the Court previously found that (1) Iran provided AAH with "significant support—in the form of training, supplies, intelligence, and funding—as part of its larger strategy to destabilize Iraq and [to] drive the United States from the Middle East," (2) "AAH held [Sergeant] Al-Taie hostage, brutally beat and murdered him," and (3) AAH could "not have committed . . . th[o]se acts without Iran's support." *Id.* at 58. The Court further found that Iran's role in these events was sufficient to support the Court's subject matter

jurisdiction under 28 U.S.C. § 1605A(a), *see id.* at 86, and that, because "Plaintiffs accomplished service under 28 U.S.C. § 1608(a)(4) on Iran, the Court possesses personal jurisdiction over it, *id.* at 89. In addition to those findings, the Court concluded that the U.S. national plaintiffs had "carried their burden of establishing a right to relief under the federal cause of action established in § 1605A." *Id.* at 76. That conclusion, however, did not extend to Plaintiff Bashar Al-Taie.

Plaintiff Bashar Al-Taie is not a U.S. national and, as a result, cannot rely on the FSIA's cause of action, which applies only to "a national of the United States," "a member of the armed forces," "an employee [or contractor] of the [U.S.] Government . . . acting within the scope of the employee's employment," or "the legal representative of" any such person. 28 U.S.C. § 1605A(c). But, as the Court explained in *Fritz I*, that does not fully resolve Bashar Al-Taie's claims. Under the "pass-through approach" foreign family members, like Bashar Al-Taie, may rely on state tort law to supply the requisite cause of action. *See Fritz I*, 320 F. Supp. 3d at 89. That approach requires the court first to determine "which jurisdiction's substantive law to apply," *Oveissi v. Islamic Republic of Iran*, 573 F.3d 835, 841 (D.C. Cir. 2009), and then to evaluate whether the plaintiff has offered "admissible evidence sufficient to substantiate the essential elements of [his] claim," *Fritz I*, 320 F. Supp. 3d at 76.

Following that approach, the Court applied D.C. choice-of-law principles and concluded that D.C. law applies to Bashar Al-Taie's common law claims. *See Fritz I*, 320 F. Supp. 3d at 89–91. The Court further concluded, however, that Bashar had yet to establish that he was entitled to relief under D.C. law for any of his asserted state law claims, which included (1) wrongful death, (2) intentional infliction of emotional distress, (3) conspiracy, and (4) aiding and abetting. *See id.* at 91–92. As to his wrongful death claim, the Court noted that it was not aware of any authority that "permits a sibling to recover for wrongful death under D.C. law." *Id.* at 91.

His claims for "conspiracy" and "aiding and abetting" were, likewise, unavailing because Bashar had not identified, and the Court was not aware of, any authority that recognized an independent action for those claims. *Id.* Finally, as to his IIED claim, the Court noted that the D.C. Circuit had certified to the D.C. Court of Appeals the question whether "a claimant alleging emotional distress arising from a terrorist attack that killed or injured a family member" must "have been present at the scene of the attack in order to state an [IIED] claim," and concluded that it would be premature to decide Bashar's IIED claim "[u]ntil [after] the D.C. Court of Appeals answer[ed] that question." *Id.* at 92 (quoting *Owens v. Republic of Sudan*, 864 F.3d 751, 809–10 (D.C. Cir. 2017)). The Court, accordingly, denied without prejudice Bashar Al-Taie's motion for entry of default. *Id.*

The month after the Court issued its opinion in *Fritz I*, the D.C. Court of Appeals answered the question in *Republic of Sudan v. Owens*, 194 A.3d 38 (D.C. 2018), holding that D.C. law permits a plaintiff to bring an IIED claim for emotional distress arising from a terrorist attack that killed or injured a family member, even if the plaintiff was not present at the scene of the attack. *Id.* at 42–45. Relying on that decision, Bashar Al-Taie now moves for (1) the entry of a default judgment on liability against Iran, (2) an award of damages for the intentional infliction of emotional distress resulting from those acts, and (3) an award of punitive damages. Dkt. 108 at 1.

## II. ANALYSIS

To obtain a default judgment against Iran, Bashar "must (1) carry [his] burden of producing evidence sufficient to show that [his] claims fall within the state-sponsored terrorism exception to the FSIA," (2) "establish that [D]efendants were served in accordance with the FSIA," and (3) "establish [his] right to relief under federal or state law . . . by offering evidence

4

satisfactory to the court." *Fritz I*, 320 F. Supp. 3d at 57 (internal quotations and citations omitted). In *Fritz I*, the Court found that Bashar Al-Taie, like the other plaintiffs in the case, had satisfied the first and second of these requirements—that is, his claims fall within the state-sponsored terrorism exception to the FSIA and Iran and the IRGC were served in accordance with the FSIA. *See id.* at 86, 89. Bashar Al-Taie failed to show, however, that he had satisfied the third requirement—that is, that a federal statute or an applicable common law tort affords him a right to relief. As the Court explained in *Fritz I*, D.C. law governs Bashar Al-Taie's state law claims but he had "yet to establish . . . that [he] [was] entitled to recover under that body of law." *Id.* at 91. His renewed motion picks up where his previous motion left off. He now presses only his IIED claim and argues that he is entitled to relief because the D.C. Court of Appeals has now recognized that a plaintiff who suffers emotional distress due to a terrorist attack that killed a family member is entitled to relief, even if the plaintiff was not present at the terrorist attack. Dkt. 108 at 4, 9.

**A.      IIED and D.C. Tort Law**

In *Republic of Sudan v. Owens*, 194 A.3d 38 (D.C. 2018), the D.C. Court of Appeals was asked to answer the following question certified to it by the D.C. Circuit:

> Must a claimant alleging emotional distress arising from a terrorist attack that killed or injured a family member have been present at the scene of the attack in order to state a claim for intentional infliction of emotional distress?

*Id.* at 38. As a starting point, the D.C. Court of Appeals held that under D.C. law § 46(2)(a) of the Restatement (Second) of Torts "governs IIED claims where the plaintiff's distress was caused by harm to a member of his or her immediate family member." *Id.* at 41. Thus, "as a general matter, to recover for IIED [under D.C. law], a plaintiff whose emotional distress arises

from harm suffered by a member of his or her immediate family must be 'present' when the harm occurs and otherwise satisfy the rule established in . . . § 46(2)(a)." *Id.* at 42.

But, as the court further explained, the general rule that an IIED claimant must be "present" when the harm occurs is subject to an important "caveat": the presence requirement does not apply in "an IIED case where the defendant is a state sponsor of terrorism denied sovereign immunity by the FSIA." *Id.* The D.C. Court of Appeals reasoned that the presence requirement was not necessary to "ward off disingenuous claims" or to provide "a judicially manageable standard that protects courts form a flood of IIED claims" in FSIA terrorism cases because the same factors that "justify stripping foreign sovereigns of their immunity allay the concerns that the presence requirement was designed to address." *Id*. at 42–43.  As a result, if a plaintiff satisfies the requirements of  28 U.S.C. § 1605A, he is excused from the presence requirement and may establish an IIED claim by "satisfying the remaining elements of § 46(2)(a)—that is, [he] must establish that the defendant engaged in 'extreme and outrageous conduct' and [that the defendant] 'intentionally or recklessly' caused the plaintiff[] 'severe emotional distress' by harming a member of the[] [plaintiff's] 'immediate family.'" *Id.* at 44.

**B.    Bashar Al-Taie's IIED Claim**

Bashar Al-Taie satisfies all the elements required to recover against Iran on his IIED claim.

To start, the presence requirement does not apply to his IIED claim because he has already satisfied each of the requirements of the state-sponsored terrorism exception to the FSIA, 28 U.S.C. § 1605A.  *See Fritz I*, 320 F. Supp. 3d at 78 (discussing the requirements for the FSIA's state-sponsored terrorism exception and concluding that they are satisfied in this case). The only remaining question, then, is whether Bashar Al-Taie has offered evidence sufficient to

satisfy the remaining elements of the tort. The evidence must show that (1) Iran engaged in "extreme and outrageous conduct" that (2) "intentionally or recklessly" (3) caused him to suffer severe emotional distress (4) by harming a member of his "immediate family." Restatement (Second) of Torts § 46.

The evidence already before the Court easily satisfies most of these elements. The immediate family member element is satisfied because "immediate family" encompasses siblings. *See Murphy v. Islamic Rep. of Iran*, 740 F. Supp. 2d 51, 75 (D.D.C. 2010). Likewise, the requirement that the conduct be "extreme and outrageous" is satisfied because "[a]cts of terrorism are by their very definition extreme and outrageous and intended to cause the highest degree of emotional distress." *Valore v. Islamic Rep. of Iran*, 700 F. Supp. 2d 52, 79 (D.D.C. 2010). That same conclusion applies when a foreign state, which has been designated as a "state sponsor of terrorism," provides material support or resources used to effectuate an act of terrorism. *See, e.g.*, *Estate of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229, 298 (D.D.C. 2006) (holding that Iran's "conduct in facilitating, financing, and providing material support to bring about this attack was intentional, extreme, and outrageous").

On the facts of this case, moreover, the Court has no difficulty finding that Iran's conduct was "beyond all possible bounds of decency" and thus "extreme and outrageous." *Bernstein v. Fernandez*, 649 A.2d 1064, 1075 (D.C. 1991) (quoting Restatement (Second) of Torts § 46, comment d.). As the Court previously explained, Iran actively provided material support to "AAH as part of a comprehensive campaign to deter the U.S. from maintaining a presence in the Middle East by terrorizing and intimidating coalition forces." *Fritz I*, 320 F. Supp. 3d at 86. That conduct allowed AAH to hold Sergeant Al-Taie hostage, to torture him, and, ultimately to murder him. The conduct was, by any measure, "atrocious, and utterly intolerable in a civilized

community," *Bernstein*, 649 A.2d at 1075 (quoting Restatement (Second) of Torts § 46, cmt. d). The Court is also persuaded that Iran acted "intentionally or recklessly." As explained in greater detail in *Fritz I*, the evidence shows that Iran acted "in deliberate disregard of a high degree of probability," Restatement (Second) of Torts § 46, cmt. d, that its conduct would result in emotional distress to the immediate family members of the victims of the acts of terror that their support helped to accomplish—including Bashar, *see Fritz I*, 320 F. Supp. 3d at 86 (concluding that "Plaintiffs' injuries were 'reasonably foreseeable or anticipated as a natural consequence' of Iran's support to AAH").

This leaves only the question whether Bashar Al-Taie suffered severe emotional distress. Under D.C. law, "'mental anguish' and 'stress' [does] not rise to the level of 'severe emotional distress' required" to establish an IIED claim. *Futrell v. Dep't of Labor Fed. Credit Union*, 816 A.2d 793, 808 (D.C. 2003) (citing *Sere v. Group Hospitalization, Inc.*, 443 A.2d 33, 37 (D.C. 1982)). Rather, the conduct must "cause the plaintiff emotional upset of so acute a nature that harmful physical consequences might be not unlikely to result." *Sere*, 443 A.2d at 37 (quoting *Clark v. Associated Retail Credit Men*, 105 F.2d 62, 65 (D.C. 1939)). Bashar Al-Taie has offered no evidence that he has suffered any "physical consequences" of his emotional trauma, but the Court finds that the emotional impact of years of uncertainty about the fate of his brother, only to learn that he had been tortured and brutally murdered, is both "severe" and the type of trauma that is "not unlikely to result" in "harmful physical consequences."

The evidence Bashar Al-Taie offers falls into two buckets. First, he offers compelling evidence that he shared a very close relationship to his brother. He has offered, for example, deposition testimony that he and his brother were "close [in] age" and, as children, "used to play together," go "to school together," and engaged in "hobbies . . . together." Dkt. 80-9 at 5

(Bashar Dep. 10:7-8, 11:7–13.).  He and his brother "used to drive together with [their] parents and swim together, play together, do everything together . . . [a]ll the time . . . together," Dkt. 80-9 at 9 (Bashar Dep. 28:14–18).  As a teenager, Bashar Al-Taie "used to go" watch his brother's band practice.  *Id.* at 7 (Bashar Dep. 18:7–8).  Staff Sergeant Al-Taie was also close to Bashar Al-Taie's children; "they used to love their uncle too much because [he let them] do whatever they want to do, [even if] they want[ed] to mess the room and all."  *Id.* at 9 (Bashar Dep. 26:18–22).  Later, when Ahmed Al-Taie joined the army, he called "like every week[,] twice probably."  *Id.* at 6 (Bashar Dep. 16:17–18).

Second, Bashar Al-Taie offers evidence that the loss of his brother had a terrible impact on his family.  He attests, for instance, that after his brother's death his father "[couldn't] sleep for two to three days," *id.* at 8 (Bashar Dep. 24:15–17), and that both his parents now have a "bunch of pills"—antidepressants and anti-anxiety medications—that "they have to take every day," *id.* (Bashar Dep. 25:12–13).  This testimony is consistent with the deposition testimony of their father, Kousay Al-Taie, and mother, Nawal Al-Taie.  Both attest, for example, that since their son's abduction and death they have suffered from anxiety, depression, and high-blood pressure, that Nawal Al-Taie has also developed diabetes despite having no family history of diabetes, and that Nawal and Kousay Al-Taie have been on antidepressants and sleeping medication.  *See* Dkt. 80-6 at 8 (Kousay Dep. 22:1–23:21) (describing physical manifestations of the emotional distress Kousay and Nawal suffered); *accord* Dkt. 80-7 at 7 (Nawal Dep. 19:17–20:4) (sleeplessness); *id.* at 8–9 (Nawal Dep. 25:15–26:2) (high-blood pressure, diabetes, sleep medication); *id.* at 9 (Nawal Dep. 26:15–24) (depression and antidepressants); *id.* (Nawal Dep. 29:4–15) (ongoing need for medication).

Although there is no evidence that Bashar Al-Taie suffered "physical" harm as a result of his emotional distress, the Court finds that he suffered the type of devastating—indeed, crushing—emotional trauma that falls within the scope of the tort of IIED. Iran's conduct in supporting AAH's terrorist activity—including the torture and murder of a son and brother—was "sufficiently extreme and outrageous" to support Bashar Al-Taie's claim for relief. *See, e.g.*, *Homan v. Goyal*, 711 A.2d 812, 821 (D.C. 1998) (holding that a plaintiff could establish severe emotional distress even absent evidence of bodily harm).

**C.     Damages**

The final question is the measure of damages. Bashar seeks "$5,000,000 in solatium damages" and "an award of punitive damages in an equal amount [the Court awarded] to . . . his brother, [Plaintiff] Hathal." Dkt. 108 at 13. As explained below, the Court concludes that Bashar is entitled to an award of compensatory damages, prejudgment interest, and punitive damages akin to what the Court has awarded to Hashal Al-Taie, Ahmed's other brother.

Plaintiff Bashar Al-Taie has provided scant briefing on the types of damages available under D.C. law and merely asserts that he entitled to solatium and punitive damages. Dkt. 108 at 14–15. The Court, moreover, is unaware of any decisions from the D.C. Court of Appeals regarding the appropriate relief for an IIED claimant in an FSIA terrorism case. Courts in this jurisdiction, however, have long treated § 1605A(c) solatium claims as "indistinguishable from . . . IIED claim[s]" and have looked to precedents "awarding damages for intentional infliction of emotional distress" in assessing FSIA solatium claims. *Valore*, 700 F. Supp. 2d at 85; *see also Estate of Hirshfeld v. Islamic Republic of Iran*, 330 F. Supp. 3d 107, 140–41 (D.D.C. 2018). The converse is equally apt, and the Court will, accordingly, look to FSIA precedent in considering the proper measure of damages in this terrorism-related IIED case.

In the typical FSIA terrorism case, solatium damages are awarded to the victim's family members "based on multiple factors—including 'evidence establishing an especially close relationship between the plaintiff and decedent,' 'medical proof of severe pain, grief or suffering on behalf of the claimant,' and the particular 'circumstances surrounding the terrorist attack which made the suffering particularly more acute or agonizing.'" *Fritz v. Islamic Republic of Iran*, No. 5-cv-456, 2018 WL 5046229, at *23 (D.D.C. Aug. 13, 2018), *report and recommendation adopted as modified*, 324 F. Supp. 3d 54 (D.D.C. 2018) (quoting *Oveissi*, 768 F. Supp. 2d at 26–27). Here, Bashar Al-Taie has offered compelling evidence concerning his close relationship to Ahmed Al-Taie and the extreme pain that Bashar suffered as a result of Ahmed's abduction, torture, and murder. Based on that evidence, the Court finds that, like the others Al-Taie Plaintiffs, Bashar experienced "extreme suffering" as he "waited for over five years to learn the fate" of his brother. *Fritz*, 2018 WL 5046229, at *23. The Court, accordingly, concludes that it is appropriate to award Bashar Al-Taie $4.5 million in compensatory damages, which is equal to the amount of solatium damages awarded to Plaintiff Hathal Al-Taie. *See id.* Likewise, the Court concludes that it is appropriate to award Bashar Al-Taie prejudgment interest on that award utilizing the same methodology used to calculate the Hathal's award, which results in an award of $ 3,240,000.[1] *See id.* at *24 ("It is within the Court's discretion to award prejudgment interest from the date of the attack until the date of final judgment").

Bashar also seeks, and the Court will award, "punitive damages in an equal amount to that of his brother, Hathal." Dkt. 108 at 14. Section 1606 of the FSIA generally "precludes punitive damages against a sovereign defendant." *Owens*, 864 F.3d at 817. As the D.C. Circuit

---

[1] As in *Fritz I*, the Court has calculated the prejudgment interest as the average prime rate in each year from the date of the attack, October 23, 2006, to April 2020. *See* Dkt. 93 at 14 & n.2. Here, that results in a multiplier of 1.72.

has explained, however, "§ 1606, by its terms, applies only to claims brought under § 1605 and § 1607," and "has no bearing upon state law claims brought under the jurisdictional grant in § 1605A." *Id.* Thus, "a plaintiff bringing state-law claims through the jurisdiction provided by § 1605A(a)" may "obtain punitive damages against a foreign state" if punitive damages are warranted under state law. *See Owens v. Republic of Sudan*, 174 F. Supp. 3d 242, 290 (D.D.C. 2016), *aff'd*, 864 F.3d 751 (D.C. Cir. 2017). Here, because Bashar Al-Taie's claim is brought pursuant to the jurisdictional grant in § 1605A, the Court may award punitive damages to the extent Bashar Al-Taie is entitled to such relief under D.C. law.

Under D.C. law, the intentional infliction of emotional "provide[s] an appropriate basis for an award of punitive damages" because "it is by definition willful and outrageous conduct which society finds intolerable, and seeks to deter." *Sere*, 443 A.2d at 37–38. Moreover, as the Court has previously explained, despite the D.C. Circuit's holding that "a plaintiff proceeding under either state or federal law cannot recover punitive damages for conduct occurring prior to the enactment of § 1605A," *Owens*, 864 F.3d at 818, the Al-Taie Plaintiffs, including Bashar Al-Taie, may recover punitive damages because Ahmad Al-Taie "was not murdered until sometime between February 2009 and February 2011, well after the enactment of the 2008 NDAA," Dkt. 93 at 15. Given that D.C. law and the FSIA permit Bashar to obtain punitive damages and given that the Court has previously concluded that punitive damages is warranted in this case, it will award Bashar Al-Taie punitive damages in an amount equal to the amount awarded Hathal. That is, Bashar Al-Taie is awarded $7,826,831 in punitive damages.[2]

---

[2] This figure was calculated by first determining Hathal Al-Taie's portion of the compensatory damages awarded to the estate and family of Al-Taie. To do so, the Court divided the total amount of compensatory damages awarded to Hathal Al-Taie ($7,224,887) by the sum of compensatory damages awarded to the Estate of Ahmed Al-Taie, Kousay Al-Taie, Nawal Al-Taie, and Hathal Al-Taie ($51,604,488). The Court then multiplied that figure (0.14) by the total

**CONCLUSION**

For the reasons explained above, the Court will grant Plaintiffs Bashar Al-Taie's motion for default judgment, Dkt. 108, will enter default judgments against Defendants the Islamic Republic of Iran and the Islamic Revolutionary Guard Corps with respect to the intentional infliction of emotional distress claim brought by Plaintiff Bashar Al-Taie, and will award damages to Plaintiff Bashar Al-Taie as described above.

A separate order will issue.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: May 15, 2020

---

amount of punitive damages awarded to Estate of Ahmed Al-Taie, Kousay Al-Taie, Nawal Al-Taie, and Hathal Al-Taie ($55,903,936).  *See Fritz v. Islamic Republic of Iran*, 324 F. Supp. 3d 54, 66 (D.D.C. 2018) (holding that "the award of punitive damages will be apportioned among the estate and family of Al-Taie relative to their individual compensatory awards" (internal quotations and citations omitted)).